2/10/15

14-3495

This is a pro se motion, asking the Court to please accept this additional filing to be included in my recently filed COA.

I requested to counsel(s) to present this issue in my COA. I didn't learn until the last minute that counsel(s) had made the final decision to exclude this issue from my filings, without first confirming it with me; as we had agreed.

Upon knowing that this issue was being left out, yet wanting to make sure that it was presented to the Court, I decided to send to the Court a copy of the draft that I sent to counsel(s) to be presented.

Though this is a draft of the issue, I do believe that it explains why this Court should consider granting COA on this issue, why it's debatable, how and why the District Court erred in its determanation of the facts and evidence, and how the prejudice denied me the right to conflict free counsel, effective assaistance of counsel and a fair trial; in violation of my First, Fifth, Sixth, and Eighth Amendments.

I hope for the Court's understanding and acceptance of this issue....

BILLIE ALLEN
26901-044
P.O. BOX 33
Terre Haute, IN.
47808

RECEIVED

FEB 1 7 2015

U.S. COURT OF APPEALS
EIGHTH CIRCUIT

DID THE TRIAL COURT'S FAILURE TO INQUIRE
INTO THREE SEPERATE "NOTICES" OF A CONFLICT
OF INTEREST AND THE NEED TO REMOVE COUNSEL,
DENY THE DEFENDANT'S RIGHTS TO CONFLICT-
FREE REPRESENTATION, EFFECTIVE ASSISTANCE
OF COUNSEL AND A FAIR TRIAL?

The record and evidence to support this issue is clear and undeniable. The record shows that the defendant would file two seperate motions, on two different occasions, months before trial, asking the court to remove trial counsel, Richard Sindel, from his Capital case. The motions would specify that there were "communication problems", trial counsel wasn't investigating facts and evidence that could aid in the defense, and that the problems complained about warranted the removal of counsel.

Though the trial court would receive two "notices" from the defendant, the court neglected its obligation to thoroughly inquire into the factual basis of the defendant's dissatisfaction with counsel. The court's failure to do so, denied the defendant's right's to conflict-free counsel, effective assistance of counsel, and the defendant's right to a fair trial.

It's one thing for the court to deny one motion and ignore anything that the defendant says aboout why counsel should be removed. It's another to deny a second motion, which mirrored the first, alerting the court that whatever problems counsel and the defendant were having, had yet to be resolved.

In Holloway v. Arkansas, 435 U.S. 475 (1980), the Court addressed situations where the trial court is made aware of a "potential conflict of interest" before, during, or in some instances, after trial. Under those circumstances, the Court held that the trial court "has a duty to conduct a 'seraching inquiry' into the 'possibility of a constitutional violation arising from that conflict.'" See Wood v. Georgia, 450 U.S. 261 (1981).

The most telling evidence is the assertion by trial counsel(s), in The Motion For A New Trial, where counsel(s) would tell the court:

> "The District Court erred, clearly erred, or abused its
> descrection in denying the defendant's motion for
> appointment of different counsel (Doc. Nos. 95 & 97),
> in violation of the First, Fifth, Sixth, and Eighth
> Amendments."

Because of the motion filed by counsel(s), there's no way that an attorney, who confirms he should've been removed from the case, can be effective, free from conflict, guarantee he will present an adequate defense, or guarantee a fair trial; for a case he said he should've been removed from.

In Koste v. Dormire, 260 F.3d 872, 879 (8th Cir. 2001); Atley v. Ault, 191 F.3d 865, 870 n.4 (8th Cir. 1999); and Caban v. United States, 281 F.3d 778 (8th Cir. 2002) (citing Wood, 450 U.S. at 272 n.18) states "the trial court is 'obligated' to conduct an inquiry, 'regardless of the nature of the conflict.'" In this case, the record shows that the court didn't attempt to see why the defendant and counsel(s) felt that counsel should be removed from the case. The court didn't inquire before, during, or after the trial.

It would be a mistake for the Court to consider cases like, Mickens, Nor, Morelos, or even Winfield, as the government suggested to the district court. In these cases, they deal with "non-notices", where the court held a hearing or inquired into the conflict, or where the defendant(s) waived their right to conflict-free representation. None of those factors apply here.

But, if the Court was to ask the defense to show how the "communication problems", counsel(s) failure to investigate facts and evidence, and leaving Mr. Sindel on the case hampered the defense, the Court should consider the following facts and evidence:

1. There was DNA found on a "White Strap", at the crash site. The government would test the DNA against the victim and Mr. Allen. The DNA would exclude the victim and Mr. Allen. The government tested this evidence, in hopes of linking Mr. allen to the crime scene. Counsel never investigated this evidence or attempted to present it in Mr. allen's defense. (None of which was a trial strategy.)

2. DNA was found at another location, miles away, that's linked to the crime. The DNA was found on a "Damp Rag". This DNA was never tested by the government to see if it belonged to the victim, Mr. Allen, or Holder. Counsel never investigated this evidence, asked for testing, or presented it in Mr. Allen's defense. (None of which was a trial strategy.)

3. Counsel failed to present the dispatch tape of the following facts:

a..."supposedly, he's on North Euclid at this
time going towards the Metrolink... Time is 1104."

b..."He was in that yard at 6900 Clayton ... He
saw him crawling underneath the fence."

c. "from a guard in the 5900 block of Clayton that
the subject was last seen crawling under the
fence ...Time is 1107."

d. ..."will have an injured right hand...at 1108."

e. ..."He was advised by a jogger by Steinberg's
Skating rink that that subject fitting the
description was last seen going North and East
towards Kingshighway towards the bikepath
...Time is 1112."

4. Counsel failed to interview, investigate or present the testimony
of Greg porter, who would describe a person 5'8" and matching the
description of the person police were looking for, around
Kingshighway.

5. Counsel failed to interview, investigate or present the testimony
of Joe Powell. He would describe the person he saw, just as Mr.
Porter had, and in the same area.

These facts and evidence would've challenged and contradicted the government's theory
that Mr. Allen was the second suspect, that the two park workers, who testified that
they gave the "second suspect a ride out of the park", (allegedly Mr. Allen), were
actually lying, (Being that they would change their testimony the day before trial),
and that the "second suspect" had an injury which left blood on the "White Strap" and
"The Damp Rag." Proving Mr. allen's Innocence.

6. Counsel failed to investigate, interview witnesses and present evidence
where the Government would test Mr. Allen's clothes for traces of
gasoline. The Government would present a witness who would testify
that Mr. allen's clothes "reeked" of smoke; though no other witness

likewise. Also, the Government would present the testimony of its Forensic scientist, who would testify that "the entire getaway van" was "soaked in gasoline." If Mr. allen had been in the van his clothes would've had traces of gasoline on them. Counsel failed to investigate and present this fact and evidence.

7. Counsel failed to investigate and present Broderick Bonner, who would've contradicted the testimony of Wayne Ross,(who swore that he talked to Holder while they were all in the car about the robbery.) Bonner told police that the conversation never took place.

8. Counsel failed to present and investigate Jeffery Moore, who would tell police that he heard Holder talk to others, a year before the robbery, about robbing the bank. Also, he too would contradict Wayne Ross' testimoney about Wayne Ross being at a table, listening to Holder and Mr. Allen talking about robbing the bank.

9. Counsel failed to investigate and present testimony, concerning an anonymous call, where a witness saw Holder at the bowling alley, with someone, other than Mr. allen, planning the bank robbery.

10. Counsel failed to investigate and present G. Vaughn, who would sell Holder the guns that were used in the robbery and who would tell police that Holder had talked to others about robbing the bank.

11. Counsel failed to investigate and present Yalanda Curry, who would testify at the Grand Jury that she got a call from Mr. Allen after the robbery and that he talked to her about the crime. In fact, Yalanda and Mr. Allen have never met each other before and have never talked.

12. Counsel failed to investigate and present evidence that could prove that officer's lied when they said that Mr. Allen "initiated" contact with officers, when he allegedly asked to speak with

Lieutenat Ron Henderson, because the two "supposedly" knew each other from "another contact." The file from the situation that officer's lied about shows that Henderson never came to the crime scene and that the two never talked that day. Though the Government knew about the file and that Henderson and Mr. Allen never met, they would still aloow officer's to lie about the "contact" and counsel never presented evidence which could've shown that officers were lying. (Mr. Allen couldn't have asked to speak with someone he never met!)

13. Counsel never objected at trial, when Lieutenant Henderson finally confessed that he didn't know that Mr. Allen requested an attorney, as he had lied about knowing at the suppression hearing. (Lies which were used in the Fact Findings and ruilings of the Magistrate and the District Court.

14. Counsel failed to investigate and present the file from a police report, where Special Agent Jan Hartman said that she had personally talked with the officer on the case and that the officer said that he remembered Mr. Allen, the arrest and that Mr. Allen was well aware of his Miranda rights. In fact, the police reports would've contradicted the testimony of Agent Hartman and showed that her and the officer were lying; because the crime they talk about was actually done by someone other than Mr. Allen.

15. Counsel failed to investigate and presnt Chris Shegog, who told police in an interview that he had saw Mr. Allen at Northwest Plaza, at the time the crime was taking place. Mr. Shegog was a security guard at the time and he was at the mall to pick up his check.

It's clear that the court erred in its obligation to inquire into the three notices brought to its attention, by the defendant and counsel(s). Secondly, it's clear that counsel "communication problems", and failure to investigate and present the facts mentioned, denied the defendant conflict-free counsel, effective assistance of counsel, a right to an adequate defense and a fair trial.

Counsel(s) failure to alert the court sooner about Mr. Sindel needing to be removed, counsel(s) failure to investigate facts and evidence which challenge, contradict and prove Mr. Allen's Innocence show that counsel(s) performance fell below the standards

set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, which states that "in order to prevail on a claim of ineffective assaistance of counsel, the defendant must show; (1) his attorney's performance did not conform to the degree of skill, care and dilligence rendered by a reasonably competent attorney, under similar circumstances; and (2) as a result of the attorney's performance, he was prejudiced."

The defendant has shown that the court failed to inquire into three "notices" of a conflict and asking for counsel to be removed. The defendant has also show how counsel(s) performance fell below the standards set forth in Strickland.