# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### Case No. 14-3495

_____

## BILLIE JEROME ALLEN,

### Appellant,

### v.

## UNITED STATES OF AMERICA,

### Appellee.

_____

## APPELLANT'S BRIEF

_____

## CAPITAL § 2255 PROCEEDINGS
(District Court Case No. 4:07-CV-0027-ERW)

Timothy Kane
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
 for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

July 30, 2015

**TABLE OF CONTENTS**

TABLE OF CONTENTS...............................................................................................i

TABLE OF AUTHORITIES ....................................................................... ii

PRELIMINARY STATEMENT REGARDING CITATIONS ...........................iv

SUMMARY OF THE CASE.......................................................................1

JURISDICTIONAL STATEMENT ...........................................................1

STATEMENT OF THE ISSUE ON APPEAL........................................................2

STATEMENT OF THE CASE.................................................................3

SUMMARY OF ARGUMENT ................................................................9

ARGUMENT .......................................................................................10

MR. ALLEN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL
COUNSEL FAILED TO OBJECT TO THE EMPANELING OF AN ANONYMOUS JURY .........10

   A.  An Anonymous Jury Implicates a Defendant's Fifth
     and Sixth Amendment Rights.........................................................10

   B.  The Anonymous Jury Was Unconstitutional in this Case ............................12

   C.  Counsel Were Ineffective..............................................................19

   D.  The District Court Erred ...............................................................23

CONCLUSION ....................................................................................25

# TABLE OF AUTHORITIES

## Federal Cases

*Allen v. United States*, 536 U.S. 953 (2002) ...................................................................8

*Allen v. United States*, 2011 WL 1770929 (E.D. Mo. 2011) ....................................iv

*Bell v. Wolfish*, 441 U.S. 520 (1979) ...........................................................................11

*Burns v. Gammon*, 260 F.3d 892 (8th Cir. 2001) .................................................19, 20

*Chandler v. Florida*, 449 U.S. 560 (1981) ....................................................................11

*Coffin v. United States*, 156 U.S. 432 (1895) .......................................................10, 21

*Delo v. Lashley*, 507 U.S. 272 (1993) ...........................................................................10

*Kelly v. South Carolina*, 534 U.S. 246 (2002) ............................................................22

*Lockett v. Ohio*, 438 U.S. 586 (1978) .....................................................................15, 18

*Manning v. Bowersox*, 310 F.3d 571 (8th Cir. 2002) .................................................19

*Morgan v. Illinois*, 504 U.S. 719 (1992) ......................................................................18

*Reagan v. Norris*, 365 F.3d 616 (8th Cir. 2004) .........................................................19

*Ring v. Arizona*, 536 U.S. 584 (2002) ............................................................................8

*Shepherd v. Maxwell*, 384 U.S. 333 (1966) ................................................................11

*Skipper v. South Carolina*, 476 U.S. 1 (1986) ............................................................22

*Strickland v. Washington*, 466 U.S. 668 (1984) ...................................................19, 21

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ....................................................................11

*United States v. Allen*, 247 F.3d 741 (8th Cir. 2001) ...................................................8

*United States v. Allen*, 357 F.3d 745 (8th Cir. 2004) ...................................................8

*United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (en banc) ................................8

*United States v. Allen*, 549 U.S. 1095 (2006) ...............................................................8

*United States v. Crockett*, 979 F.2d 1204 (7th Cir. 1992) ........................................13

*United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995) ....................................passim

*United States v. DeLuca*, 137 F.3d 24 (1st Cir. 1998)...............................................11

*United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012)..................................passim

*United States v. Edmond*, 52 F.3d 1080 (D.C. Cir. 1995) ................................11, 16

*United States v. Lawson*, 535 F.3d 434 (6th Cir. 2008).............................................11

*United States v. Mansoori*, 304 F.3d 635 (7th Cir. 2002) .......................................11

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005)....................16, 18

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) ....................................24, 25

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) ......................................passim

*United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003) ..........................................11

*Wiggins v. Smith*, 539 U.S. 510 (2003)........................................................19, 20, 21

## State Cases

*State v. Brown,* 118 P.3d 1273 (Kan. 2005) ...............................................................17

*State v. Lewis*, 524 P.2d 1231 (Or. App. 1974) ........................................................10

*State v. Ross*, 174 P.3d 628 (Utah 2007) ...................................................................17

*State v. Samonte*, 928 P.2d 1 (Haw. 1996) ...............................................................17

*State v. Sundberg*, 247 P.3d 1213 (Or. 2011) ...........................................................21

## Federal Statutes

18 U.S.C. § 924...............................................................................................................3

18 U.S.C. § 2113 ............................................................................................................3

18 U.S.C. § 3432 ....................................................................................................passim

## Other Authorities

A. Abramovsky & J. Edelstein, *Anonymous Juries: In Exigent
Circumstances Only*, 13 St. John's J. Legal Comment., 457 (1999).......................17

ABA Guidelines for the Appointment and Performance of Counsel
in Death Penalty Cases, Guideline 11.7.3 (1989).................................................19

Random House Dictionary, Random House, Inc. (2015).......................................13

## PRELIMINARY STATEMENT REGARDING CITATIONS

All citations to the Joint Appendix are styled as "JA" followed by the relevant page number(s).

Citations to other court documents in the § 2255 proceedings below (District Court Case No. 4:07-cv-27) are indicated as "Civ. Doc. #."   Citations to court documents in the underlying criminal case (District Court Case No. 4:97-cr-141) are indicated as "Crim. Doc. #."

Pin cites to court documents refer to the page numbers applied by the ECF system, not necessarily to the page number on the original document.

The District Court's opinion denying a hearing and denying relief on the claim presented herein is available at *Allen v. United States*, 2011 WL 1770929 (E.D. Mo. 2011).   The relevant portions are attached in the Addendum and are included in the Joint Appendix at JA 26-33.

## SUMMARY OF THE CASE

This is a federal capital case on appeal from the denial of Mr. Allen's § 2255 petition. The case presents significant questions of federal constitutional procedure, including when a District Court may utilize an anonymous jury, and what procedures qualify as jury anonymity. As a capital post-conviction case, this matter is obviously of the utmost importance. This Court's decision will also provide guidance in future cases and comes at a time when government secrecy in its many forms is a topic of great public interest. For these reasons, Appellant requests oral argument and suggests an allotment of twenty minutes for each party.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction under 28 U.S.C. §§ 1291, 2253 and 2255. Appellant was sentenced to death in the United States District Court for the Eastern District of Missouri. On December 10, 2007, Appellant timely filed his § 2255 petition, as amended on February 11, 2008. JA 1. The District Court denied a hearing on the issue presented in this appeal, and the court issued judgment denying all relief on June 25, 2014. JA 26-34. The District Court denied Appellant's motion to alter judgment on August 22, 2014, and Appellant timely filed a notice of appeal on October 20, 2014. Civ. Docs. 382-83. On May 18, 2015, this Court granted a certificate of appealability as to the issue presented below.

1

## STATEMENT OF THE ISSUE ON APPEAL

The District Court empaneled an anonymous jury, and throughout trial the jurors were referred to only by number. The jurors were made to understand both that concealing their names was unusual, and that the unusual procedure was related to the capital charges in this case. Under precedent that was well established at the time of trial, counsel could have prevailed on an objection to this unusual and prejudicial procedure, but counsel inexplicably failed to object. Appellant was prejudiced by counsel's failure at the guilt phase and especially at the penalty phase. In § 2255 proceedings, the District Court erred in denying this claim without a hearing. The issue presented in this appeal is "[w]hether Mr. Allen was denied effective assistance of counsel when trial counsel failed to object to the empanelling of an anonymous jury." Corr. Order (8th Cir. May 18, 2015).

Pursuant to Eighth Circuit Rule 28A(i), the most apposite cases and constitutional and statutory provisions in this appeal are:

*United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995)

*United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012)

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994)

U.S. Const. amend. V

U.S. Const. amend. VI

18 U.S.C. § 3432.

## STATEMENT OF THE CASE

In April 1997, Mr. Allen and co-defendant Norris Holder were indicted on charges stemming from the murder of a security guard during a bank robbery in St. Louis on March 17, 1997. Count I charged the defendants with killing the guard in the course of a bank robbery, in violation of 18 U.S.C. § 2113(a) & (e), and count II charged the use a firearm to commit a crime of violence resulting in the bank guard's murder, in violation of 18 U.S.C. § 924(c) & (j). JA 319-20.

In February 1998, the District Court summoned more than two hundred venirepersons for Mr. Allen's trial. *See* JA 106, 109-10. Before trial, each venireperson completed an unsigned questionnaire in which they were instructed: "Do not write your name or address on the questionnaire." JA 339. Each questionnaire instead identified the juror only by a number designated by the court. JA 340. In providing copies of the questionnaires to the parties, the court ordered that the information contained therein was not "to be used to do any background checks or independent investigations about any juror." JA 321.

To comply with 18 U.S.C. § 3432,[1] the court provided to counsel a list of names and addresses of the two hundred venirepersons, but the list did not match

---

[1] 18 U.S.C.A. § 3432 provides:

> A person charged with treason or other capital offense shall at least three entire days before commencement of trial . . . be furnished with . . . a list of the veniremen, . . . stating the place of abode of each

names to the assigned juror numbers and was never updated as jurors were dismissed or seated. *See* JA 323; *see also* JA 102 (prosecutor observing that, although "juror names have been provided to the parties[, n]umbers have not been attached to the names"). The jurors thus remained anonymous to everyone but the court. This fact became abundantly clear to the jurors.

At the outset of trial, the court told the venire: "in this case you are treated more as a number because you have a number, and *you will be referred to only by number during this whole process*." JA 113 (emphasis added). The court explained that "each time there is a reference to you, you will state I am number so and so" and told the prospective jurors they would only "be addressed by number." JA 114-15; *see also* JA 138-39. The court explicitly warned them: "Do not state your name." JA 120. The prospective jurors, and later the seated jurors, followed these admonitions throughout trial.

It was unmistakable to the jurors that their anonymity was an unusual measure. *See, e.g.*, *id*. (court mistakenly telling jurors to state their names, then immediately correcting itself and telling them not to share their names); JA 149-50 (court telling prospective jurors that it is "[k]ind of weird we are talking in numbers here" and commenting that it "[k]ind of reminds me of that old show with

venireman . . . , except that such list of the veniremen . . . need not be furnished if the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person.

4

Maxwell Smart, where they referred to 'number 6' and 'number 5'"); JA 154 (defense counsel telling prospective jurors: "Some day you'll memorize your numbers. We're getting pretty good at it"; venireperson responding: "I always look to make sure."). Indeed, five of the seated jurors had served on juries in previous cases in which they presumably had not concealed their identities. *See* JA 124-30, 144-47; *see also* JA 158 ("most of the number of you have sat on juries before and some of you had indicated that you -- most of you had indicated you had reached verdicts in those cases.").

It was also clear to the jurors that the parties did not know their names and thus that the numbering procedure was not limited to statements made in open court. As the prosecutor told the venire: "We did not know your names which is why we are calling you by your numbers." JA 152. Defense counsel similarly complained, "I hate to use the numbers, but that's what we got." JA 133; *see also* JA 160 (prosecutor remarking that "we were ordered not to run any record checks on anybody or do any background investigation on any of these panelists, *which would be hard to do without their names anyway*.") (emphasis added); JA 162 (defense counsel stating, on the final day of the guilt phase, that "[w]e don't know names" of the jurors).

Venirepersons used their numbers to sign communications with the court, *see* JA 156, in completing their questionnaires, *see* JA 340, and in referring to each

other, *e.g.*, JA 150-51. *See also* JA 164, 310-12 (jurors being polled by number).

The jurors were led to understand that concealing their names was related to the capital charges in the case. The court told prospective jurors:

> Each of you has been assigned a number, and you have been seated in numerical order. You will be addressed by number in this questioning process. This is a capital case in which one of the possible penalties [upon] conviction is death.

JA 139. The court did not otherwise explain why it was necessary to conceal the jurors' identities.

Mr. Allen was convicted of both counts at the guilt phase, and the case then proceeded to penalty phase before the same jury, at which the defense presented testimony from various family members, friends, and former teachers of Mr. Allen. During penalty phase, the prosecution complained to the Court:

> [T]he defendant's witnesses are congregating in the hallway outside here and the jurors have to basically run this gauntlet of people every time they go to the snack bar or places like that. I think it's inappropriate. It's an indirect form of coercion on them that they should not be subjected to. I think there is a witness room for these people to remain in.

JA 169; *see also* JA 170 (prosecutor describing the presence of defense witnesses as "intimidating" to the jury).

The prosecution presented significant evidence and argument that Mr. Allen would present a future danger to society, and the defense sought to establish that he would not be a future danger. *See, e.g.*, JA 166-67 (prosecutor's opening

statement); JA 223-24, 230-32, 271-72, 276-79 (prosecutor's closing arguments). For example, the prosecutor argued that Mr. Allen "has committed a whole series of crimes, very serious ones, and some very savage ones." JA 224.[2] Later, the prosecutor continued:

> He will be dangerous to guards, he will be dangerous to other prisoners because that's the kind of person he is. If he's got somebody defenseless, somebody who's not as strong as him, somebody at his mercy, you know exactly what he is capable of. He is capable of absolute inhumanity. I would hate to be at his mercy.

JA 271. The prosecutor insisted that Mr. Allen was a "murderous dog" who was "extremely dangerous in every way." JA 277-78.

In its verdicts, the jury found identical aggravating and mitigating circumstances on the two counts, but returned a sentence of life imprisonment on count I and death on count II. JA 301, 309. The jury was split in its appraisal of whether Mr. Allen would be a "threat to society" if sentenced to life imprisonment, with six jurors finding he would be, and the remaining six finding that he would not. JA 299, 308-09. The jury was unanimous as to only two mitigating circumstances – one of which was that "[t]he offenses for which Billie Allen has been convicted are inconsistent with his prior behavior." JA 298, 307.

---

[2] In fact, Mr. Allen had never been arrested for, let alone convicted of, any other violent crime, and his only prior criminal record was a vehicle tampering case when he was a juvenile.

7

The District Court formally sentenced Mr. Allen on June 4, 1998. On appeal, this Court affirmed. *United States v. Allen*, 247 F.3d 741 (8th Cir. 2001). Mr. Allen petitioned for a writ of certiorari, and following its decision in *Ring v. Arizona*, 536 U.S. 584 (2002), the Supreme Court granted the petition, vacated this Court's decision, and remanded for reconsideration in light of *Ring*. *Allen v. United States*, 536 U.S. 953 (2002).

On remand, a panel of this Court vacated the death sentence, finding that the indictment's failure to charge a statutory aggravating factor violated Mr. Allen's Fifth Amendment right to indictment by a grand jury, and that the error was not harmless beyond a reasonable doubt. *United States v. Allen*, 357 F.3d 745 (8th Cir. 2004). The en banc Court reversed, finding that the error was harmless, and reinstated Mr. Allen's death sentence. *United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) (en banc). The Supreme Court denied certiorari. *United States v. Allen*, 549 U.S. 1095 (2006).

In 2007, Mr. Allen initiated proceedings pursuant to 28 U.S.C. § 2255, and on February 11, 2008, he filed an Amended Motion under 28 U.S.C. § 2255, raising eighteen grounds for relief. JA 1. In a Memorandum and Order on May 10, 2011, the District Court denied, without granting discovery or an evidentiary hearing, the claim at issue in this appeal. JA 26-33.

On June 25, 2014, the court issued judgment denying all relief and denying a certificate of appealability. JA 34. On May 18, 2015, this Court granted a certificate of appealability as to "[w]hether Mr. Allen was denied effective assistance of counsel when trial counsel failed to object to the empanelling of an anonymous jury." Corr. Order (8th Cir. May 18, 2015).

**SUMMARY OF ARGUMENT**

Under precedent that was well established at the time of trial, this Court has recognized "the danger that use of an anonymous jury could prejudice the jurors against the defendant[]." *United States v. Darden*, 70 F.3d 1507, 1532 (8th Cir. 1995). Indeed, jury anonymity can undermine the presumption of innocence by leading the jurors to believe that the defendant is a dangerous man from whom they must be protected. This Court accordingly requires trial courts to analyze multiple factors and find "strong reason to believe the jury [actually] needs protection" before ordering such a drastic measure. *Id*. The District Court in this case failed to conduct this analysis, and, had it done so, the *Darden* factors would have foreclosed juror anonymity.

Trial counsel nonetheless failed to object. Counsel had no strategic reason for this failure, and in fact recognized that the jury's anonymity was cumbersome and problematic. Appellant was prejudiced because the jury's anonymity undermined the presumption of innocence at the guilt phase, and likewise

prejudiced the jury's appraisal of Appellant's character and potential future dangerousness at the penalty phase.

In these § 2255 proceedings, the District Court denied this claim without an evidentiary hearing based on its unsupportable view that jurors identified by number are not truly anonymous, its misapprehension of the trial record, and its misreading of this Court's precedent.

**ARGUMENT**

**MR. ALLEN WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO OBJECT TO THE EMPANELING OF AN ANONYMOUS JURY**

### A. An Anonymous Jury Implicates a Defendant's Fifth and Sixth Amendment Rights

If each juror must assume individual responsibility for the verdict, the marking of an anonymous ballot enables him to avoid that responsibility. In effect, it enables the jury to maintain the same secrecy that existed during the deliberations in the jury room.

*State v. Lewis*, 524 P.2d 1231, 1232 (Or. App. 1974).

The Constitution guarantees the accused a trial by a jury of his peers who together express the conscience of the community. Among its most fundamental obligations, a jury must presume that the accused is innocent. *Delo v. Lashley*, 507 U.S. 272, 278 (1993); *Coffin v. United States*, 156 U.S. 432, 453 (1895). The Fifth and Sixth Amendments also guarantee that a jury of peers will be impartial and will judge the defendant "solely on the evidence adduced at trial and not on the basis of suspicions that may arise . . . from other matters not introduced as proof."

*Bell v. Wolfish*, 441 U.S. 520, 533 (1979); *see Chandler v. Florida*, 449 U.S. 560, 575 (1981); *Taylor v. Kentucky*, 436 U.S. 478, 483-85 & n. 12 (1978).  A jury's exposure to inadmissible influences, including the suggestion that the defendant is dangerous, thus violates due process.  *Shepherd v. Maxwell*, 384 U.S. 333, 351 (1966).

"An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence."  *United States v. Ross*, 33 F.3d 1507, 1519 (11th Cir. 1994); *see United States v. Dinkins*, 691 F.3d 358, 372 (4th Cir. 2012); *United States v. Lawson*, 535 F.3d 434, 441 (6th Cir. 2008); *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003); *United States v. Mansoori*, 304 F.3d 635, 650 (7th Cir. 2002); *United States v. DeLuca*, 137 F.3d 24, 31 (1st Cir. 1998); *United States v. Edmond*, 52 F.3d 1080, 1090 (D.C. Cir. 1995).

Accordingly, "a court should not empanel an anonymous jury without a) concluding that there is strong reason to believe the jury needs protection, and b) taking reasonable precautions to minimize any prejudicial effects on the defendant and to ensure that his fundamental rights are protected."  *United States v. Darden*, 70 F.3d 1507, 1532 (8th Cir. 1995); *accord Ross*, 33 F.3d at 1519 ("the

empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances.").

To establish whether "there is strong reason to believe the jury needs protection," courts must consider five factors:

(1) the defendant's involvement in organized crime;

(2) the defendant's participation in a group with the capacity to harm jurors;

(3) the defendant's past attempts to interfere with the judicial process;

(4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties; and

(5) extensive publicity that would increase the likelihood that jurors' names would become public and expose them to intimidation or harassment.

*Darden*, 70 F.3d at 1532. A court takes "reasonable precautions" to prevent undue prejudice where it provides the jury an innocent explanation for their anonymity and conducts a thorough voir dire. *Id*. at 1533. Under this standard, Mr. Allen's rights were violated and he was prejudiced as a result.

**B.     The Anonymous Jury Was Unconstitutional in this Case**

**1.     The jury was anonymous**

The jurors were ordered not to reveal their names or addresses and were repeatedly made aware that the parties did not know their identities. In the questionnaires, the court ordered the jurors: "Do not write your name or address on the questionnaire." JA 339. The court instructed the jurors from the outset of voir

dire that they should not reveal their names and that they would "be referred to only by number during this whole process." JA 113. The court reiterated this instruction multiple times. *See* JA 114-15, 120, 138-39, 164, 310-12.

This procedure was identical to the one used in *Darden*, where this Court recognized that the trial court empaneled "an anonymous jury" when the jurors were "identified by numbers rather than their names." *Darden*, 70 F.3d at 1533; *accord United States v. Crockett*, 979 F.2d 1204, 1215 n.10 (7th Cir. 1992) ("The withholding of this identifying information, particularly the jurors' names, gives rise to the term 'anonymous jury.'") (citing cases). This procedure was likewise "anonymous" under any creditable meaning of the word; anonymous is defined as "without any name acknowledged," "of unknown name," and "whose name is withheld." Random House Dictionary, Random House, Inc. (2015) *available at* http://dictionary.reference.com/browse/ anonymous?s=t. Because the jurors were instructed to withhold their names and the parties were unaware of the jurors' identities, the jury was anonymous.

This conclusion is not altered by the fact that, in order to comply with 18 U.S.C. § 3432,[3] the court gave the parties a list of names of the more than two

---

[3] 18 U.S.C. § 3432 requires the court to provide all capital defendants with a list of names and addresses of the veniremen and excuses this requirement only where "the court finds by a preponderance of the evidence that providing the list may jeopardize the life or safety of any person." The District Court did not, and could not, make such a finding here. The court thus abused its discretion by empaneling

13

hundred venire members.  The list was never matched to the jurors' numbers and was never updated to specify the names of the seated jurors.  Moreover, the court ordered the parties not to perform "any background checks or independent investigations about any juror."  JA 321.  As the record amply reflects, providing this list left the parties just as ignorant of the jurors' identities as they were before, and did not alter the jurors' perception that their names and addresses were concealed from the parties.  *See, e.g.*, JA 152 (prosecutor telling venire: "We did not know your names which is why we are calling you by your numbers."); JA 133 (defense counsel stating: "I hate to use the numbers, but that's what we got."); *see also* JA 160 (prosecutor remarking: "we were ordered not to run any record checks on anybody or do any background investigation on any of these panelists, which would be hard to do without their names anyway."); JA 162 (defense counsel stating: "[w]e don't know names" of the jurors).

### 2. Anonymity was unjustified under the *Darden* standard

As the Government conceded below, none of the first three *Darden* factors is present in this case.  *See* Doc. 79 at 76-78.  The fourth factor, and typically the fifth factor, are inherent in federal capital cases and thus cannot, in and of themselves,

---

an anonymous jury while effectuating technical compliance with § 3432.  *See Dinkins*, 691 F.3d at 374 ("the language of Section 3432 requires that a decision to empanel an anonymous jury be supported by a preponderance of the evidence.  Thus, a decision to empanel an anonymous jury in a capital case without evidence meeting this standard constitutes an abuse of discretion").

justify jury anonymity.[4] *Cf. Darden*, 70 F.3d at 1533 (finding an anonymous jury appropriate where all five factors were present). Indeed, the Constitution requires courts to provide *greater* procedural protections for capital defendants, not lesser protections. *E.g.*, *Lockett v. Ohio*, 438 U.S. 586, 604 (1978) (the "qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed"). In the context of federal capital cases, Mr. Allen's case was not remarkable in either the possible punishments or the potential that publicity would result in juror intimidation or harassment.

More fundamentally, there was *no evidence* that the jurors needed protection, let alone "strong reason to believe" as much. *Darden*, 70 F.3d at 1532.[5] There was never a suggestion that Mr. Allen had threatened jurors, or was connected with any group that might intimidate or harass them. This was not an organized crime prosecution. Mr. Allen had never been convicted of a violent crime; his only prior conviction was for motor vehicle tampering as a juvenile, for which he was sentenced to probation. And Mr. Allen's potential conviction was never likely to garner public sympathy that could have engendered hostility toward the jury. This case was nothing like *Darden* or the other cases where federal courts

---

[4] The publicity in this case was not so extensive as to induce a motion for change of venue, which is a touchstone for establishing the fifth factor. *See Darden*, 70 F.3d at 1533.

[5] The District Court did not find otherwise. Instead, the court denied this claim based on its mistaken view that the jury was not anonymous. *See infra*, part D.

have approved the use of an anonymous jury. *See id.*; *see also Ross*, 33 F.3d at 1521 (cited approvingly in *Darden*).

### 3. The District Court failed to take appropriate remedial measures

Even where the *Darden* factors establish a *"strong reason to believe the jury needs protection" – which was not established here –* the trial court must still take "reasonable precautions" to protect the defendant's rights and minimize undue prejudice. *Darden*, 70 F.3d at 1532. The District Court failed to take adequate precautions in this case.

Where appellate courts approve the drastic measure of an anonymous jury, they typically rely in part on the jury having been provided an innocent explanation for their anonymity. *Dinkins*, 691 F.3d at 378 ("In order to protect a defendant tried by an anonymous jury from having the jury conclude that the defendant is a dangerous person from whom the jurors must be protected, courts customarily provide the jury a non-prejudicial reason for their anonymity."); *United States v. Ochoa-Vasquez*, 428 F.3d 1015, 1037 (11th Cir. 2005) (discussing "the generally accepted practice for minimizing prejudice, which is to downplay (not accentuate) the significance of the juror anonymity procedure."); *Edmond*, 52 F.3d at 1093 ("By instructing jurors that the use of an anonymous jury was routine, the District Court avoided the possibility that jurors would view the procedure as an extraordinary precaution signaling a threat from the defendants and, inferentially,

16

the defendants' guilt."); *see also Darden*, 70 F.3d at 1532 (trial court told jurors that their anonymity was intended to avoid harassment by the media).[6] As commentators have explained:

> By means of such instructions, judges imply that the jurors are not being kept anonymous because of any reputation or threat of misconduct on the part of the defendant, and that the jurors should not feel as if they are being protected from the defendant.

A. Abramovsky & J. Edelstein, *Anonymous Juries: In Exigent Circumstances Only*, 13 St. John's J. Legal Comment. 457, 473 (1999).

Here, the trial court did not provide *any* "non-prejudicial reason" to the jurors and, rather than indicating that anonymity was "routine," the court and the parties repeatedly "accentuated" how unusual the procedure was. *See, e.g.*, JA 120 (court first telling jurors to state their names, then immediately correcting itself and telling them not to share their names); JA 149-50 (court telling prospective jurors that it is "[k]ind of weird we are talking in numbers here" and commenting that it "[k]ind of reminds me of that old show with Maxwell Smart, where they referred to 'number 6' and 'number 5'"); JA 154 (defense counsel telling prospective jurors: "Some day you'll memorize your numbers. We're getting pretty good at

---

[6] A number of state courts have adopted the same requirement. *See State v. Ross*, 174 P.3d 628, 638 (Utah 2007) (trial courts "should give anonymous jurors a plausible and nonprejudicial reason for not disclosing their identities that decreases the probability that the jurors would infer that the defendant is guilty or dangerous."); *accord State v. Brown,* 118 P.3d 1273, 1279 (Kan. 2005); *State v. Samonte*, 928 P.2d 1, 16 (Haw. 1996).

it"). Moreover, some seated jurors had served on juries in other cases in which they presumably had not partaken in such unusual secrecy. *See* JA 124-30, 144-47, 158. Under these circumstances, the District Court, at a minimum, should have provided the jurors with a non-prejudicial explanation for their anonymity, but the court failed to do so.

In some cases, a court's "reasonable precautions" against prejudice will also include thorough voir dire of the venire. *See Darden*, 70 F.3d at 1532; *but see Ochoa-Vasquez*, 428 F.3d at 1037 (ruling that jury anonymity did not entitle defendants to additional voir dire). Here, the record contains no indication that the court or the parties conducted additional or more thorough voir dire in light of the jury's anonymity. And while the voir dire in this case was extensive, that is typical in capital cases and, in fact, is mandatory to a significant degree. *See Morgan v. Illinois*, 504 U.S. 719, 735-36 (1992) (in capital cases the parties are entitled to voir dire potential jurors on their views on death penalty). As capital cases require heightened procedural protections, *see Lockett*, *supra*, the expanded voir dire in capital trials does not itself establish a "reasonable precaution" to prevent the prejudice that otherwise results from juror anonymity. The District Court failed to take reasonable precautions to minimize the prejudice here, and trial counsel inexplicably failed to object.

### C. Counsel Were Ineffective

The Sixth Amendment right to effective assistance of counsel is violated when counsel's representation is deficient, in that it falls below "an objective standard of reasonableness," and when the defendant is prejudiced, meaning that confidence is undermined in the outcome of the proceeding. *Wiggins v. Smith*, 539 U.S. 510, 521 (2003); *Strickland v. Washington*, 466 U.S. 668, 694 (1984). Trial counsel's performance here was objectively deficient, and Appellant was prejudiced as a result.

### 1. Deficient performance

It is well established that counsel's failure to raise a timely objection to a constitutional violation constitutes deficient performance. *See Reagan v. Norris*, 365 F.3d 616, 622 (8th Cir. 2004) (finding trial counsel's failure to object to jury instructions constitutionally deficient); *Manning v. Bowersox*, 310 F.3d 571, 576-77 (8th Cir. 2002) (finding trial counsel's failure to object to admission of evidence constitutionally deficient); *Burns v. Gammon*, 260 F.3d 892, 896-97 (8th Cir. 2001) (finding counsel deficient for failing to object to prosecutor's closing argument); *see also* ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases, Guideline 11.7.3 (1989) ("counsel should take steps where appropriate to preserve, on all applicable state and Federal grounds, any given question for review.").

Mr. Allen's trial was held in 1998. This Court decided *Darden* in 1995, and other circuits had recognized the constitutional implications of anonymous juries years earlier. *See Darden*, 70 F.3d at 1532 (citing cases). Counsel therefore should have been aware that the procedure was permissible only in narrow circumstances, and that those circumstances were not present in this case. Moreover, the parties were apprised of the District Court's intentions with respect to jury anonymity well in advance of trial. *See* JA 321-30, 339. Counsel had ample opportunity to move in limine or otherwise object pre-trial, but counsel failed to do so. Under these circumstances, "no sound trial strategy could include failing to make a constitutional objection." *Burns*, 260 F.3d at 897. Counsel's performance was deficient, as Appellant would prove at an evidentiary hearing.[7]

## 2. Prejudice

Prejudice is established when there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Wiggins*, 539 U.S. at 534. Such a probability can be shown by less than a preponderance of the evidence:

---

[7] Because the District Court denied an evidentiary hearing on this claim, there is no record as to why counsel failed to object. Accordingly, and in light of *Strickland*'s presumption of counsel's competence, the most prudent course would be for the Court to remand for a limited evidentiary hearing before ruling on the deficient performance prong of this claim.

The result of a proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome.

*Strickland*, 466 U.S. at 694. With respect to the penalty phase, prejudice is established where there is a reasonable probability that even one juror would have voted for a life sentence. *Wiggins*, 539 U.S. at 537.

The presumption of innocence is among the most deeply engrained principles of our justice system. *Coffin*, 156 U.S. at 453-60. Requiring jurors to conceal their identities, however, "raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence." *Ross*, 33 F.3d at 1519. This Court has accordingly recognized the risk of prejudice inherent in jury anonymity. *Darden*, 70 F.3d at 1532.

The prejudicial effect was significantly worse here because the District Court failed to provide a neutral explanation for the jurors' anonymity. Appellate courts have typically upheld jury anonymity *only* where such an instruction is given. *See Dinkins*, 691 F.3d at 378.[8] Thus, without such an instruction, there is a reasonable likelihood that members of this jury attributed the unusual secrecy to the purported threat that Mr. Allen posed to them. A jury so infected with fear of

---

[8] *See also State v. Sundberg*, 247 P.3d 1213, 1223 (Or. 2011) ("the *unexplained use* of an anonymous jury created too great a risk that the jury may have believed that defendant was dangerous – and, therefore, that he was more likely to be guilty, denying defendant the right to a trial by an impartial jury.") (emphasis added).

an accused cannot reliably adjudge his guilt.

Appellant was especially prejudiced at penalty phase. No issue weighs more heavily on a capital sentencing jury's decision than whether the defendant is likely to be a future danger. *See, e.g.*, *Kelly v. South Carolina*, 534 U.S. 246, 253-54 (2002) ("a defendant's demonstrated propensity for violence reasonably will [lead a jury to] conclude that he presents a risk of violent behavior" in the future); *Skipper v. South Carolina*, 476 U.S. 1, 5 (1986) ("Consideration of a defendant's past conduct as indicative of his probable future behavior is . . . inevitable.").

Here, the parties sharply disputed whether Mr. Allen would be a future danger. The prosecutor emphasized in his closing argument his view that Mr. Allen was a "murderous dog" who was "extremely dangerous in every way," including that he would "be dangerous to guards" and "dangerous to other prisoners" in the future. JA 277-78, 271; *see also* JA 166-67, 223-24, 230-32. In its penalty phase verdicts, the jurors split down the middle in their appraisal of whether Mr. Allen would be a "threat to society," with half the jury finding he would be, and the other half finding that he would not. JA 299, 308-09. Tellingly, the jury also split its verdicts on the capital counts, returning a life sentence on count I and a death sentence on count II, despite finding identical aggravating and mitigating factors on each count. JA 301, 309. In short, this was an unusually close penalty phase decision in which Mr. Allen's purported dangerousness was a

key focus of the parties' dispute.

Accordingly, if juror anonymity is ever to be found prejudicial, it must be found prejudicial at this penalty phase. The court's improper procedure raised the specter of Mr. Allen's dangerousness and stamped the court's imprimatur on it, where the jury's life-or-death decision was a close one and turned in no small part on its perception of that danger. Under these circumstances, there is a reasonable likelihood that Mr. Allen's death sentence was influenced by the improper empaneling of an anonymous jury, a procedure made possible by counsel's failure to object.

### D. The District Court Erred

The District Court did *not* find that the *Darden* factors supported juror anonymity. *See* JA 31. Instead, the court ruled that "the jury panel was not truly anonymous," because the parties learned other information about the jurors through the questionnaires and voir dire. *Id.* The court's reasoning was inconsistent with *Darden* and overlooked the plain meaning of "anonymous." *See supra*, part B.1.

The District Court also incorrectly stated that jurors were referred to by numbers only "in open court." JA 31. This assertion is belied by the record. The jurors were directed to refer to themselves "*only by number during this whole process,*" JA 113 (emphasis added), even in their non-public jury questionnaires

23

and in communications sent to the judge. *See* JA 156, 339-40. Nothing in the record supports the notion that the jurors' names were concealed only "in open court."

Most importantly, the harm in juror anonymity arises from the *jurors' perception* of the need to conceal their names *from the defense*. In this case, it could not have been any clearer to the jurors that the parties did not know their names, and thus that the numbering procedure was not limited to statements made in open court. *See, e.g.*, JA 152 (prosecutor: "We did not know your names which is why we are calling you by your numbers."); JA 133 (defense counsel: "I hate to use the numbers, but that's what we got."); *see also* JA 160, 162.

The District Court's erroneous resolution of this claim appears to have derived from a misreading of *United States v. Peoples*, 250 F.3d 630, 635 (8th Cir. 2001). The District Court apparently believed that *Darden* does not apply where numbers are used to identify jurors. *See* JA 31 (citing *Peoples*). This view misreads *Darden* itself, where this Court recognized that the trial court empaneled "an anonymous jury" where the jurors were "identified by numbers rather than their names." *Darden*, 70 F.3d at 1533. The District Court's reading of *Peoples* would abrogate *Darden* – which the *Peoples* panel neither purported, nor had the authority, to do. *Peoples* merely recognized that numerical references to jurors are acceptable *in any case where the Darden factors justify anonymity*. *See Peoples*,

250 F.3d at 635. The District Court erred in ruling that the jury in this case was not anonymous.

## CONCLUSION

The District Court empaneled an anonymous jury where the *Darden* factors did not justify such a drastic measure. The court then failed to take appropriate precautionary measures, and the jurors were left to wonder whether the defendant posed a danger to them personally. Despite well-established precedent foreclosing the District Court's procedure, trial counsel ineffectively failed to object. Appellant was prejudiced at the guilt phase and particularly at the penalty phase of trial. Accordingly, the District Court erred in denying this claim without an evidentiary hearing. This Court should grant relief or, at a minimum, remand for a limited hearing on the question of counsel's deficient performance.

Respectfully Submitted,


/s/ Timothy Kane
Timothy Kane
Eric Montroy
Federal Community Defender Office
  for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Dated:       July 30, 2015

**Statement of Compliance with Eighth Circuit Rule 28A(h)**

I, Timothy Kane, hereby certify that Appellant's Brief and Addendum have been scanned for viruses, and those documents are virus-free.

/s/ Timothy Kane
Timothy Kane

## Certificate of Service

I, Timothy Kane, hereby certify that on this 30th day of July, 2015, I filed the foregoing Appellant's Brief with service via electronic delivery to:

Ms. Carrie Constantin
First Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102

/s/ Timothy Kane
Timothy Kane