**No. 14-3495**

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

*BILLIE JEROME ALLEN*

*Petitioner – Appellant*

*v.*

*UNITED STATES OF AMERICA*

*Respondent – Appellee*

Appeal from the United States District Court
for the Eastern District of Missouri

**BRIEF OF RESPONDENT – APPELLEE**

**RICHARD G. CALLAHAN**
**United States Attorney**

**Carrie Costantin**
**Assistant United States Attorney**
**Thomas F. Eagleton U.S. Courthouse**
**111 South Tenth Street, 20th Floor**
**St. Louis, Missouri 63102**

## SUMMARY AND POSITION ON ORAL ARGUMENT

Petitioner Billie Jerome Allen (Allen) was convicted and sentenced to death for the murder of bank guard Richard Heflin. *See United States v. Allen*, 247 F.3d 741 (8th Cir. 2001). In 2007, Allen filed a Motion pursuant to 28 U.S.C. §2255 in District Court. The District Court ultimately denied all of Allen's claims and likewise denied a certificate of appealability on all claims.

This Court granted a certificate of appealability solely on the issue of whether Allen was denied effective assistance of counsel when his trial counsel failed to object to the empanelling of an anonymous jury. The jury was not anonymous. Trial counsel was not ineffective for his failure to object to the District Court's use of numbers to refer to jurors during voir dire. Trial counsel received the names and addresses of the jurors. Counsel also received exhaustive background information on all the jurors from the jury questionnaires. Furthermore, Allen fails to show any prejudice suffered as a result of trial counsel's failure to object to this procedure.

The Government does not believe that oral argument is necessary in this case. The issues raised can be addressed by a review of the record and application of existing law. However, should the Court grant Appellant's request for oral argument, the Government respectfully requests an equal amount of time to respond.

i

# TABLE OF CONTENTS

**Page No.**

Summary and Position on Oral Argument................................................................. i

Table of Contents ....................................................................................................... ii

Table of Authorities ................................................................................................... iv

Statement of the Issues Presented ..............................................................................1

Statement of the Case..................................................................................................2

    A.  PROCEDURAL HISTORY..................................................................................2

    B.  JURY SELECTION ..........................................................................................4

    C.  TAMPERING WITH A WITNESS .....................................................................9

    D.  THE VERDICT..............................................................................................10

Summary of the Argument.........................................................................................11

Argument....................................................................................................................12

    I.  TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY SELECTION PROCESS AND ALLEN CANNOT SHOW PREJUDICE ........................................................................12

        A.  Standard of Review ..................................................................12

        B.  Trial Counsel Was Not Ineffective For Failing to Object to the Jury Selection Process Because the Jury Was Not Anonymous ..................................................................12

        C.  Even if the Jury Was Anonymous, Trial Counsel Was Not Ineffective for Failing to Object because the *Darden* Factors Permitted the Use of an Anonymous Jury ..........................................................................................18

     D.    Allen Fails to Demonstrate Any Prejudice to His Defense as a Result of Trial Counsel's Failure to Object to the Jury Empanelment Procedure ...................................22

Conclusion ..........................................................................................27

Certificate of Compliance ....................................................................28

Certificate of Service ...........................................................................29

iii

# TABLE OF AUTHORITIES

**Page No.**

**Cases**

*Allen v. United States*, 549 U.S. 1095 (2006) ..................................................................3

*Allen v. United States*, 549 U.S. 1246 (2007) ..................................................................3

*New v. United States*, 652 F.3d 949 (8th Cir. 2011) .....................................................13

*Ring v. Arizona*, 536 U.S. 584 (2002) ...........................................................................3

*Rodriquez v. United States*, 17 F.3d 225 (8th Cir. 1994) ...........................................18

*Scott v. United States*, 473 F.3d 1262 (8th Cir.2007) ...............................................12

*Strickland v. Washington*, 466 U.S. 668 (1984) ................................................. 12, 22

*United States v. Allen*, 247 F.3d 741 (8th Cir. 2001) ............................................. i, 2

*United States v. Allen*, 357 F.3d 745 (8th Cir. 2004) ................................................3

*United States v. Allen*, 406 F.3d 940 (8th Cir. 2005) ................................................3

*United States v. Arena*, 180 F.3d 380 (2d Cir. 1999) ....................................... 13, 18

*United States v. Branch*, 91 F.3d 699 (5th Cir. 1996) .............................................26

*United States v. Brown*, 303 F.3d 582 (5th Cir. 2002) .............................. 19, 22, 23

*United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995)........ 1, 11, 18, 19, 20, 22, 23

*United States v. DeLuca*, 137 F.3d 24 (1st Cir. 1998)..............................................20

*United States v. Dinkins*, 691 F.3d 358 (4th Cir. 2012).................................... 20, 24

*United States v. Edmond*, 52 F.3d 1080 (D.C. Cir. 1992) ............................... 21, 24

*United States v. Harris*, 763 F.3d 881 (7th Cir. 2014) ..............................................17

*United States v. Jones*, 643 F.3d 257 (8th Cir. 2011)................................................19

*United States v. Lee*, 886 F.2d 998 (8th Cir. 1989) .................................................1, 13

*United States v. Lindsey*, 702 F.3d 1092 (8th Cir. 2013)............................................19

*United States v. Morales*, 655 F.3d 608 (7th Cir. 2011)............................................17

*United States v. Ochoa-Vasquez*, 428 F.3d 1015 (11th Cir. 2005)...........................24

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2000) .........................................1, 14

*United States v. Quinones*, 511 F.3d 289 (2d Cir. 2007)...........................................20

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) ....................................... 18, 23

*United States v. Scarfo*, 850 F.2d 1015 (3d Cir. 1988)..................................... 25, 26

*United States v. Shryock*, 342 F.3d 948 (9th Cir. 2003) ...........................................19

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989)..............................................25

*United States v. Vario*, 943 F.2d 236 (2d Cir. 1991) ................................... 1, 24, 25

## **Statutes**

18 U.S.C. § 2113(a) ......................................................................................................2

18 U.S.C. § 924(j)(1) ....................................................................................................2

28 U.S.C. §2255 ..................................................................................................... i, 3

## **Rules**

Federal Rules of Appellate Procedure 25(d)...............................................................29

# STATEMENT OF THE ISSUES PRESENTED

**I. Whether Allen was Denied Effective Assistance of Counsel When Trial Counsel Failed to Object to the District Court's Jury Selection Process.**

*United States v. Lee,* 886 F.2d 998 (8th Cir. 1989)

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2000)

*United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995)

*United States v. Vario,* 943 F.2d 236 (2d Cir. 1991)

# STATEMENT OF THE CASE

## A. PROCEDURAL HISTORY

On March 17, 1997, Petitioner Billie Jerome Allen (Allen) and Norris Holder robbed the Lindell Bank & Trust Company in Saint Louis, Missouri. The bank robbery resulted in the death, by multiple gunshot wounds, of bank security guard Richard Heflin. Allen was indicted for crimes stemming from the armed bank robbery in April 1997. JA 319-20. [1] Count I of the indictment charged him with killing Mr. Heflin in the course of committing an armed bank robbery, in violation of 18 U.S.C. § 2113(a) and (e) (1994). Count II of the indictment charged Allen with using a firearm to commit a crime of violence resulting in the death of another under circumstances constituting first-degree murder, in violation of 18 U.S.C. § 924(j)(1) (1994 and Supp. II 1996). JA 319-20. The Government filed a timely notice of intent to seek the death penalty, and, following a trial, a jury found Allen guilty on both counts. JA 26. The jury returned a sentence of life imprisonment on Count I, and a sentence of death on Count II. JA26.

On direct appeal, this Court affirmed Allen's convictions and sentences. *United States v. Allen*, 247 F.3d 741, 761-64 (8th Cir. 2001). Allen filed a petition

---

[1] All citations to the Joint Appendix are styled "JA" followed by the page number. Additionally, the parties have agreed to additional materials to be submitted in the form of a Supplemental Joint Appendix styled "SJA" followed by the page number. Citations to documents in the §2255 proceedings (District Court No. 4:07-CV-27 ERW) are styled "Civ. Doc. #." Citations to documents in the criminal case (District Court No. 4:97-CR-141 ERW) are styled "Crim. Doc. #."

for writ of certiorari to the United States Supreme Court. The Supreme Court granted  Allen's petition, vacated this Court's decision as to his sentence, and remanded the case to this Court for reconsideration in light of  *Ring v. Arizona*, 536 U.S. 584 (2002).

On remand, a panel of this Court initially concluded Allen's sentence of death should be vacated, finding that the indictment's failure to charge at least one statutory aggravating factor violated Allen's Fifth Amendment right to indictment by a grand jury.  *United States v. Allen*, 357 F.3d 745, 748-51 (8th Cir. 2004).  The Court also found the error was not harmless beyond a reasonable doubt.  However, following a subsequent rehearing en banc, this Court affirmed Allen's sentence, concluding the defect in the indictment was both non-structural and harmless beyond a reasonable doubt.  *United States v. Allen*, 406 F.3d 940, 945, 949 (8th Cir. 2005).  On December 11, 2006, the Supreme Court denied Allen's petition for writ of certiorari, *Allen v. United States*, 549 U.S. 1095 (2006), and, on February 20, 2007, it denied his petition for rehearing.  *Allen v. United States*, 549 U.S. 1246 (2007).

In 2007, Allen filed a Motion pursuant to 28 U.S.C. §2255 in District Court. Civ. Doc. #1.  On February 11, 2008, he filed an Amended Motion.  Civ. Doc. #60. In a Memorandum and Order dated May 10, 2011, United States District Judge E. Richard Webber (who also presided over Allen's trial) denied all but one claim

3

without an evidentiary hearing.  Civ. Doc. #147.  In 2012, the District Court conducted a lengthy evidentiary hearing on Allen's claim that his counsel was ineffective for failing to investigate and present mitigating evidence.  On June 25, 2014, in a Memorandum and Order, the District Court denied that claim and denied a certificate of appealability on all claims.  Civ. Doc. #374.

On October 20, 2014, Allen filed a Notice of Appeal.  Civ. Doc. #383.  On February 9, 2015, Allen filed a Petition for Certificate of Appealability in this Court.  The Government filed a response.  This Court granted a certificate of appealability solely on the issue of whether Allen was denied effective assistance of counsel when trial counsel failed to object to the empanelling of an anonymous jury.

### B.    JURY SELECTION

Before the trial commenced, the District Court provided Allen's defense team and the Government with the names and address of the venirepersons.  On February 2, 1998, the District Court issued an order as to Allen's and Holder's juries that stated:

> IT IS HEREBY ORDERED that by 1:00 p.m. on Wednesday, February 4, 1998, pursuant to the provisions of Section 3432 of Title 18 of the United States Code, the Court shall provide the defendants with the names and addresses of all jurors in their respective panels.

JA 323.

The District Court informed the parties that it intended to tell the jurors that they would be addressed by their number. JA 324-25 (proposed oral jury instruction, "Each of you has been assigned a number and you have been seated in chronological order. You will be addressed by number in this questioning process."); JA 102 (statement at pretrial motion hearing, "I will explain we're not intending to be impersonal but this is a process and they will be addressed by numbers and they should respond by number.").

Jury selection occurred over five days, including evenings: February 9 to 13, 1998. The District Court split the jury panel into two parts. JA 113. Judge Webber told the first half of the jury panel:

> Ladies and gentlemen, first of all, I realize that in this process sometimes it appears to be very insensitive as far as your personal—the way you are treated personally, and this case you are treated more as a number because you have a number, and you will be referred only by number during this whole process. But when you're herded around like this, I know it's inconvenient and it's uncomfortable, but there's just not a better way to do it. So each time there is a reference to you, you will state I am number so and so.

JA 113-14.

Judge Webber further told the first half of the jury panel:

> A lengthy questionnaire which has been completed by you has been very helpful in conducting the jury selection process.

> There are additional questions that must be asked of you at this time.  Each of you has been, as I have mentioned, assigned a number and you've been seated in numerical order.  You'll be addressed by number in this questioning process.

JA 115.

The next day, Judge Webber told the second half of the jury panel:

> The lengthy questionnaires which you've completed are very helpful in conducting the jury selection process.  There are additional questions that must be asked of you at this time.  Each of you has been assigned a number, and you have been seated in numerical order.  You will be addressed by number in this questioning process.

JA 139.

Each venireperson completed a 14-page questionnaire that contained 54 questions, some with numerous subparts.  JA 339-53.  The questionnaire referred to the venireperson by number.  It required them to answer questions concerning: their age; gender; state and city of birth; ethnic background; county of residence; number of years at current residence; whether they owned or rented; previous neighborhoods; education; occupation; name and address of employer; length of employment; job description; all prior occupations; whether they were supervisors; if they knew any lawyers or prosecutors; if they or a close friend or relative had been or was engaged in law enforcement; if they were married; their spouse's ethnic background; spouse's occupation and prior occupation; children's age, gender and occupation; health condition including medications; experience and

opinions of psychiatrists and psychologists; hobbies; military service of venireperson or spouse; prior jury trial service; length of trial; involvement in civil lawsuits; involvement in criminal case by venireperson, family member or close friend; arrests of venireperson, family member or close friend; indictments or convictions; if venireperson, relative or close friend had been a victim of crime; ability to conform to the presumption of innocence instruction; newspapers read; knowledge of the charged crime; ability to follow the court's instructions; ability to consider aggravating and mitigating evidence; opinions on the death penalty; religious affiliation; racial prejudice; knowledge of the attorneys in the case; knowledge of the defendant or his family; knowledge of the victim or his family; and any other reason the venireperson could not be fair.

During the pre-trial conference, Judge Webber discussed the jury questionnaire:

> Several weeks ago, there was a jury questionnaire prepared in cooperation with respective counsel. Before Monday, I shall be offering into the record a copy of that uncompleted questionnaire. It's very extensive. A lot of information was requested in that questionnaire and I believe it will be of benefit to all the parties as voir dire is conducted in this case.

JA 37.

Neither party objected to the District Court's procedures. Neither the District Court nor the parties referred to the jury as an anonymous jury. The pre-

trial discussion concerned the mechanics of the jury selection:

> THE COURT: Numerical order they'll have to be from right to left.
>
> MR. LANDOLT: I understand the juror names have been provided to the parties. Numbers have not been attached to the names. Are we going to be addressing by number?
>
> MR. SINDEL: That's what the order says. Numbers.
>
> THE COURT: Numbers only.
>
> MR. SINDEL: You don't have to memorize the names.
>
> THE COURT: I will explain we're not intending to be impersonal but this is a process and they will be addressed by numbers and they should respond by numbers.

JA 102.

During voir dire, it was apparent that there had been extensive publicity about the case. Numerous jurors told the District Court that they had heard about the robbery and murder from newspaper or television. (Venirepersons 15, 20, 32, 35, 37, 40, 41, 55, 80, 3, 4, 7, 8, 9, 30, 31, 43, 44, 47, 51, 63, 67, 70, 75, 100, 98, 97, 91, 124, 120, 139, 140, 143, 144, 145, 146, 147, 162, 66, 190, 104, 110, 112, 113, 132, 136, 57, 158, 154, 117, 127, 177, 178, 199). SJA 3-69. There was television coverage the night before the first day of jury selection. SJA 21. Despite being ordered not to view media accounts of the trial, one venireperson stated that she saw television coverage after the first day of trial indicating that jury

8

selection had started.  SJA 35-37.

During the voir dire, on occasion, venire members spontaneously provided their own names or friends' names to counsel and the District Court.  Venireperson 63 told the District Court "My name is Carl Waysen (phonetic)."  SJA 71. Venireperson 155 indicated that she knew another member of the panel.  "I don't know if she remembers me.  My name is Morgan, but I remember seeing her in high school."  SJA 70.  Venireperson 117 stated she heard about the case from "My boyfriend.  He's Mark Parish (phonetic).  He works for the Normandy Fire Department, and he also helps train city police and fire departments."  SJA 62.

### C.    TAMPERING WITH A WITNESS

During the trial, the Government presented evidence that Allen had attempted to tamper with a witness, Johnnie Grant.  The Government introduced letters written by Allen to his friend Grant.  In these letters, Allen said that Grant needed to change his testimony so that Grant did not implicate Allen in the robbery and murder.   Allen wrote to Grant to "come see me real soon because I need to tell you something about my case that I need you to testify for me about.  I don't want to say in the letter because you know how the feds are. (Do you feel me?)."  JA 331.   In another letter to Grant, Allen wrote   "You know I go to trial real soon and I called you for a witness.  The Feds got when I called you and I told you I didn't go in the bank I just drove and they are trying to use it against me.  What I need

you to say is that I told you that because I was trying to throw them off. (do you feel me?).” “I told them that I was never broke and I got my money from rapping with flexx.  And I told them that you never seen me with [co-defendant] Norris…” JA 335.  “My case can be won if you say the right things and I know you know what to say.”  JA 335-36.

### D.    THE VERDICT

The jury returned guilty verdicts on both counts:  Count I—killing Mr. Heflin in the course of committing an armed bank robbery, and Count II—using a firearm to commit a crime of violence resulting in the death of another under circumstances constituting first-degree murder.  The jury returned a sentence of life imprisonment on Count I, and a sentence of death on Count II.  JA 26.

# SUMMARY OF THE ARGUMENT

Allen contends that trial counsel rendered ineffective assistance of counsel by failing to object to the District Court's empanelment of an "anonymous" jury. Trial counsel was not ineffective for failing to object to the jury selection process because the jury was not anonymous. The parties knew the venirepersons' names and addresses, had extensive background information on each venireperson, and conducted five days of thorough voir dire.

Even if this Court would find that the jury was anonymous, the requirements for use of an anonymous jury were satisfied. *See United States v. Darden*, 70 F.3d 1507, 1532-33 (8th Cir. 1995). Allen interfered with the judicial process by attempting to tamper with a witness, he faced lengthy incarceration or execution, and there was extensive publicity about the case. The jury selection process was proper and thus trial counsel's failure to object cannot constitute ineffective assistance.

In addition, Allen cannot show prejudice from the use of numbers to identify jurors in court. Allen has not established that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different; that is, that he would have been acquitted.

Accordingly, the District Court's judgment should be affirmed.

# ARGUMENT

**I. TRIAL COUNSEL WAS NOT INEFFECTIVE FOR FAILING TO OBJECT TO THE JURY SELECTION PROCESS AND ALLEN CANNOT SHOW PREJUDICE**

### A. Standard of Review

This Court reviews the denial of a petitioner's "ineffective assistance claim[s] de novo and review[s] the district court's factual findings for clear error." *Scott v. United States*, 473 F.3d 1262, 1263 (8th Cir.2007).

A claim of ineffective assistance of trial counsel is evaluated by the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668, 671, 687 (1984). To succeed on his claim, Allen "must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland*, 466 U.S. at 687. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. This Court "indulge[s] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

### B. Trial Counsel Was Not Ineffective For Failing to Object to the Jury Selection Process Because the Jury Was Not Anonymous

The law at the time of the 1998 trial distinguished between a completely anonymous jury and a jury in which numbers were used for the venirepersons.

Thus, the jury selection process was proper and trial counsel cannot be found to be ineffective for failing to make a meritless objection. *See New v. United States*, 652 F.3d 949, 953 (8th Cir. 2011) (holding that defendant could not have been prejudiced by his attorney's failure to make a meritless argument); *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999) (failure to make a meritless argument does not amount to ineffective assistance.).

Pursuant to this Court's case law, Allen's jury was not anonymous. In *United States v. Lee,* 886 F.2d 998 (8th Cir. 1989), this Court made a distinction between an "anonymous" jury—in which the names of jurors were withheld from counsel—and a jury in which numbers were used to identify the panelists. In *Lee,* the district court assigned numbers to each member of the venire and instructed that all references to the venire be by number. *Id.* at 1001. The defense objected, arguing that the district court had empaneled an "anonymous" jury. This Court disagreed, stating, "Although defendants characterized the use of numbers to identify the jury venire as an unconstitutional "anonymous" jury, we note that defendants' counsel were provided with the names of the jurors, and find no prejudice in the court's procedure." *Id.* 1001-02.

When Allen's trial counsel was confronted with the same procedure in this case, there was no basis to object to the jury as "anonymous." Therefore, failing to

object to the jury selection process did not fall below the wide range of reasonable professional assistance.

The distinction between an anonymous jury and one whereby jurors were identified only by number was made again by this Court in a decision issued after Allen's trial. In *United States v. Peoples*, 250 F.3d 630 (8th Cir. 2000), the district court provided the parties with the names and addresses of each member of the venire panel and ordered that the panel members be identified in court by numbers rather than names. This Court affirmed this practice stating, "The district court has wide discretion to empanel an anonymous jury if it finds that a person's life or safety is in jeopardy, *or to require the use of numbers for identification in any case.*" *Id.* at 635 (emphasis added). Thus, the *Peoples* court distinguished between an anonymous jury—where names and addresses were withheld—and one in which numbers were used in court after names and addresses had been supplied.

It is undisputed that the District Court provided Allen's defense team and the Government with the names and address of the venirepersons. In its February 2, 1998, the District Court issued an order as to Allen and his co-defendant's juries that stated:

> IT IS HEREBY ORDERED that by 1:00 p.m. on Wednesday, February 4, 1998, pursuant to the provisions of Section 3432 of Title 18 of the United States Code, the Court shall provide the defendants with the names and addresses of all jurors in their respective panels.

JA 323.

Pretrial, the District Court told the parties that he intended to instruct the jurors that they would be addressed by their number. JA 325 ("Each of you has been assigned a number and you have been seated in chronological order. You will be addressed by number in this questioning process."); JA 102 ("I will explain we're not intending to be impersonal but this is a process and they will be addressed by numbers and they should respond by number."). Judge Webber told the first half of Allen's jury panel:

> Ladies and gentlemen, first of all, I realize that in this process sometimes it appears to be very insensitive as far as your personal—the way you are treated personally, and this case you are treated more as a number because you have a number, and you will be referred only by number during this whole process. But when you're herded around like this, I know it's inconvenient and it's uncomfortable, but there's just not a better way to do it. So each time there is a reference to you, you will state I am number so and so.

JA 113-114.

Similarly, Judge Webber told the second half of the jury panel:

> The lengthy questionnaires which you've completed are very helpful in conducting the jury selection process. There are additional questions that must be asked of you at this time. Each of you has been assigned a number, and you have been seated in numerical order. You will be addressed by number in this questioning process.

JA 139.

Thus, although numbers were used to address the jurors, the parties had the names and addresses of all members of the venire panel.  The parties also had extensive information about all the venirepersons.   Each venireperson completed the 14-page questionnaire containing 54 questions, many of which contained multiple subparts.  JA 339-53.   The questionnaire referred to the venireperson by number and contained extensive questions which provided Allen with a vast amount of information about each venireperson.[2]

The jury selection process lasted five days, including evening sessions.  The District Court conducted an extensive voir dire and then permitted counsel to

---

[2] As noted above, the questionnaire covered the venirepersons':  age; gender; state and city of birth; ethnic background; county of residence; number of years at current residence; whether they owned or rented; previous neighborhoods; education; occupation; name and address of employer; length of employment; job description; all prior occupations; whether they were supervisors; if they knew any lawyers or prosecutors; if they or a close friend or relative had been or was engaged in law enforcement; if they were married; their spouse's ethnic background; spouse's occupation and prior occupation; children's age, gender and occupation; health condition including medications; experience and opinions of psychiatrists and psychologists; hobbies; military service of venireperson or spouse; prior jury trial service; length of trial; involvement in civil lawsuits; involvement in criminal case by venireperson, family member or close friend; arrests of venireperson, family member or close friend; indictments or convictions; if venireperson, relative or close friend had been a victim of crime; ability to conform to the presumption of innocence instruction; newspapers read; knowledge of the charged crime; ability to follow the court's instructions; ability to consider aggravating and mitigating evidence; opinions on the death penalty; religious affiliation; racial prejudice; knowledge of the attorneys in the case; knowledge of the defendant or his family; knowledge of the victim or his family; and any other reason the venireperson could not be fair.  JA 339-53.

conduct their own comprehensive questioning.  The District Court's use of numbers to identify the jurors did not limit the information the parties knew about the jurors.  No juror information was withheld from the parties.  This abundance of information distinguishes the District Court's jury selection process from that used with an anonymous jury.

As recently as last year, the Seventh Circuit Court of Appeals defined an anonymous jury as follows:

> An 'anonymous jury' is selected from a venire whose members' identifying information—such as names, occupations, addresses, exact place of employment, and other such facts—has been withheld from the parties in order to protect potential jurors and their families.

*United States v. Harris,* 763 F.3d 881, 884 (7th Cir. 2014), *citing United States v. Morales,* 655 F.3d 608, 620 (7th Cir. 2011).  The *Harris c*ourt found that, in order for a jury to be found to be anonymous, one necessary component was that the jurors' names were withheld from the defense.  *Id.* at 885-86 (drawing distinctions between an anonymous and a confidential jury).  In *Harris,* the court held that an anonymous jury had not been employed and thus defendant's claim failed.

Allen's trial counsel's performance was not deficient for failing to object to an anonymous jury because the Allen jury was not anonymous.  The District Court provided the names and addresses of the jury panel to the parties.  The jury questionnaire was exhaustive and provided the parties with the venirepersons'

occupations, places of employment and many other details.  Trial counsel's failure to advance a meritless objection to this procedure cannot constitute ineffective assistance.  *See Rodriquez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994); *Arena*, 180 F.3d at 396.

**C.   Even if the Jury Was Anonymous, Trial Counsel Was Not Ineffective for Failing to Object because the *Darden* Factors Permitted the Use of an Anonymous Jury**

As established above, the Allen jury was not anonymous because the parties had their names and addresses as well as comprehensive questionnaire responses of the venirepersons by number.  However, even if this Court determines that Allen's jury was anonymous, the requirements for using an anonymous jury were satisfied. Therefore, trial counsel was not ineffective for failing to object to the procedure.

In *United States v. Darden*, 70 F.3d 1507, 1532-33 (8th Cir. 1995), this Court adopted the guiding principles for use of an anonymous jury that were delineated in *United States v. Ross,* 33 F.3d 1507, 1520 (11th Cir. 1994):

> [s]ufficient reason for empaneling an anonymous jury has been found to exist upon a showing of some combination of several factors, including: (1) the defendant's involvement in organized crime, (2) the defendant's participation in a group with the capacity to harm jurors, (3) the defendant's past attempts to interfere with the judicial process, (4) the potential that, if convicted, the defendant will suffer a lengthy incarceration and substantial monetary penalties, and (5) extensive publicity that could enhance the possibility that jurors' names would become public and expose them to intimidation or harassment.

*Id.*  These factors "are neither exclusive nor dispositive, and the district court should make its decision based on the totality of the circumstances."  *United States v. Shryock*, 342 F.3d 948, 971 (9th Cir. 2003); *see also United States v. Brown*, 303 F.3d 582, 602 (5th Cir. 2002) ("None of these factors is dispositive; rather, the decision to empanel an anonymous jury should be made on the totality of the circumstances.").

Three of the *Darden* factors weighed heavily in favor of empanelling an anonymous jury:  1) Allen attempted to interfere in the judicial process by tampering with a witness;[3] 2) Allen was facing the death penalty or lengthy imprisonment; and 3) there was extensive publicity about the case that enhanced the possibility that jurors' names would become public and expose them to harassment.

There was wide-spread publicity about the case.  The murder occurred less than a year before the trial date.  As noted above, at least 54 venirepersons told the District Court that they had heard about the robbery and murder from the newspaper or television. SJA 3-69.  Moreover, there was television coverage before both the first and second day of jury selection.  SJA 21, 35-37.  Thus, there

---

[3] In his brief, Allen contends that the Government did not argue this factor below.  This is inaccurate.  The Government discussed Allen's tampering with a witness in its Sur-Reply to Petitioner's Traverse. JA 32-33.  Regardless, this Court may affirm the District Court's judgment on any basis supported by the record. *United States v. Lindsey*, 702 F.3d 1092, 1101 (8th Cir. 2013), *quoting United States v. Jones*, 643 F.3d 257, 258 (8th Cir. 2011).

was clearly extensive publicity.

Another *Darden* factor was satisfied in the Allen trial: if convicted, Allen was subject to lengthy incarceration or a death sentence. Allen argues that the *Darden* factors of a significant sentence and broad publicity should not be considered because both are inherent in a capital case. There is no authority for the proposition that certain *Darden* factors do not "count" in death penalty trials. All five factors have been used to evaluate the need for an anonymous jury in capital cases. *United States v. Dinkins,* 691 F.3d 358, 374 (4th Cir. 2012); *United States v. Quinones,* 511 F.3d 289, 296 (2d Cir. 2007).

Finally, Allen attempted to interfere with the judicial process—fulfilling another *Darden* factor. Allen wrote two letters to a witness, Johnnie "Jay" Grant, to convince him to lie on Allen's behalf at trial. One letter is postmarked in 1997; the other is postmarked January 22, 1998—both before the jury selection. JA 333, 337. In evaluating the factors, a Court of Appeals "takes into account not only the evidence available at the time the anonymous empanelment occurred, but all relevant evidence introduced at trial." *United States v. DeLuca,* 137 F.3d 24, 31 (1st Cir. 1998) (concluding record as a whole afforded a sufficient foundation for empanelling an anonymous jury). Grant's letters were admitted into evidence at trial. JA 331-338.

In these letters, Allen directed Grant to change his testimony so that Grant

did not implicate Allen in the robbery and murder. In one letter, Allen wrote, "come see me real soon because I need to tell you something about my case that I need you to testify for me about. I don't want to say in the letter because you know how the feds are (Do you feel me?)." JA 331. In another letter, Allen stated "When I call you and told you I didn't go in the bank, I just drove and they are trying to use it against me. What I need you to say is that I told you that because I was trying to throw them off. (do you feel me?)" JA 335. Allen also wrote, "I told them that I was never broke and I got my money from rapping with flexx and I told them that you never seen me with [co-defendant]." JA 335. He stated, "My case can be won if you say the right things and I know you know what to say." JA 335-226. Allen was clearly attempting to interfere with the judicial process.

In *United States v. Edmond,* 52 F.3d 1080 (D.C. Cir. 1992), the court considered an order for juror anonymity based, in part, on the Government's *in camera* submissions describing threats to witnesses. The *Edmond* court found, "Numerous court decisions illustrate that such information, indicating a general willingness to obstruct justice on the part of a defendant or his associates, is more than adequate to suggest a real possibility that a defendant will threaten or otherwise tamper with jurors." *Id.* at 1092. Thus, Allen's willingness to tamper with a witness is strong evidence that weighs in favor of the need for juror anonymity.

In *United States v. Brown*, 303 F.3d 582 (5th Cir. 2002), the court approved the use of an anonymous jury where the defendants were charged with public corruption related to a "sham settlement." The *Brown* court found that defendants' history of corruption of the legal system, the potential lengthy sentences and publicity justified the use of an anonymous jury. *Id.* at 602-603.

In Allen's case, three of the five *Darden* factors weighed heavily in favor of empaneling an anonymous jury. The District Court did not abuse its discretion in identifying the jurors by number. *Darden,* 70 F.3d at 1532. As discussed above, all parties were provided with the names and addresses of the venirepersons. It did not fall below an objective standard of reasonableness for counsel not to object to the jury selection procedure here. In light of the totality of the circumstances, trial counsel's failure to object to the use of numbers to identify the panel numbers was not constitutionally deficient performance.

### D. Allen Fails to Demonstrate Any Prejudice to His Defense as a Result of Trial Counsel's Failure to Object to the Jury Empanelment Procedure

In addition to failing to establish *Strickland's* first prong, that his trial counsel's performance was deficient, Allen similarly fails to demonstrate the second prong, that he was prejudiced as a result.

The District Court in Allen's case took appropriate precautionary measures to ensure that he was not prejudiced by the use of numbers to identity the jury. In *Darden*, this Court stated that "where jury anonymity is warranted, the defendant's

22

fundamental right to an unbiased jury is sufficiently guaranteed by the court's conduct of a voir dire that can uncover any bias toward issues in the case or to the defendant himself." *Darden*, 70 F.3d at 1533, *citing United States v. Ross,* 33 F.3d 1507, 1520 (11th Cir. 1994). Similarly, in *United States v. Brown*, the Fifth Circuit found that, "the court's efforts to provide the defendants with sufficient information on the jurors through extensive juror questionnaires and voir dire adequately protected the defendants' rights and permitted them to select a jury intelligently." *Brown*, 303 F.3d at 603.

In Allen's case, the venire panel completed a thorough 14-page questionnaire and the exhaustive voir dire lasted for five days, including evening sessions. Allen's rights were protected by this thorough selection process.

Allen's rights were further protected by the Court's repeated instructions concerning the presumption of innocence. At the beginning of voir dire, the District Court stated, "In a criminal trial the defendant is presumed innocent until proven guilty beyond a reasonable doubt. This presumption remains with the defendant until found guilty by a jury. The obligation is always on the Government to prove the defendant's guilt, and there is no obligation for the defendant to prove his innocence." SJA 1, 30. Before submission of the case to the jury, the District Court instructed them again on the presumption of innocence, including a reading of Instruction 26, Eighth Circuit Model Criminal Jury

Instruction 3.06. SJA 72-73.

Presumption of innocence instructions serve to prevent prejudice to a defendant from the use of an anonymous jury. *United States v. Ochoa-Vasquez,* 428 F.3d 1015, 1035, n.28 (11th Cir. 2005); *see also United States v. Vario,* 943 F.2d 236, 241 (2d Cir. 1991) (same); *Edmond,* 52 F.3d at 1093. The District Court's reiteration of the presumption of innocence adequately protected Allen's rights.

The District Court did not provide the jury panel with an explanation of the reason for the use of numbers instead of names when referring to venirepersons. Instead, the District Court operated as though the practice was routine. In *United States v. Dinkins,* the trial court did not provide a reason for the use of an anonymous jury to the panel. The Fourth Circuit Court of Appeals concluded that:

> [T]he district court's communications to the venire members, and ultimately to the jurors, properly followed "the generally accepted practice for minimizing prejudice, which is to downplay (not accentuate) the significance of the juror anonymity procedure." [citations omitted]. Additionally, we observe that any remote possibility of harm was mitigated further because the district court properly instructed the jury on the presumption of innocence.

*Dinkins,* 691 F.3d at 378-79.

In *United States v. Vario,* the Second Circuit Court of Appeals also upheld the use of the anonymous jury where no particular instruction regarding anonymity

was provided:

> Although the district judge here did not instruct the jury in order to explain their anonymity, there is no reason to believe that the absence of instructions led the jurors to conclude other than that "[i]t is common practice" to keep jurors' names and identities in confidence, an instruction we approved when given explicitly in *United States v. Tutino,* 883 F.2d 1125, 1133 (2d Cir. 1989).

*Vario*, 943 F.2d at 241.

During the jury selection in Allen's case, the record shows that venirepersons did not view the use of numbers as ominous. In fact, several times, panel members volunteered their names or friends' names to the parties. Venireperson 63 told the District Court "My name is Carl Waysen (phonetic)." SJA 72. Venireperson 155 indicated that she knew another member of the panel. "I don't know if she remembers me. My name is Morgan, but I remember seeing her in high school." SJA 70. Venireperson 117 stated she heard about the case from "My boyfriend. He's Mark Parish (phonetic). He works for the Normandy Fire Department, and he also helps train city police and fire departments." SJA 62. There is nothing in the record to indicate that jurors drew any adverse inference or viewed the use of numbers as anything other than a typical procedure.

Moreover, Allen cannot show that the use of numbers to identify the panel members was suggestive of guilt or dangerousness. In *United States v. Scarfo,* 850 F.2d 1015, 1026 (3d Cir. 1988), the court noted that "[p]redicting juror responses

25

to the anonymity practice is pure speculation." Similarly, in *United States v. Branch,* 91 F.3d 699, 725 (5th Cir. 1996), the court found:

> At heart, the [defendants]' argument rests on a speculative inference that the jurors were more likely to render a guilty verdict because of their belief that the defendants were dangerous. Such speculation is unwarranted. Indeed, it may be that "[a] juror who fears a defendant's retaliation might be more apt to return a guilty verdict despite such fears rather than because of them." *Scarfo*, 850 F.2d at 1026.

The District Court did not abuse its discretion in employing the procedure it did during Allen's jury selection. Allen's speculative claim that jurors perceived that there was a need to conceal their names from the defense only is belied by the record. As specifically acknowledged by Allen, counsel for the Government indicated to potential jurors that he did not know their names. Appellant's Brief, p. 24; JA 152. Additionally, Allen cannot point to one instance where his trial counsel was unable to uncover bias toward the issues in the case or to Allen himself during the voir dire as a result of the procedure employed. In sum, Allen fails to show any prejudice whatsoever from the use of numbers to identify potential jurors.

Finally and crucially, he has utterly failed to show that a different jury selection procedure would have led to his acquittal or to the imposition of a life sentence instead of the death verdict.

## CONCLUSION

For all of the foregoing reasons, the Government respectfully requests that District Court's order denying Allen's Section 2255 motion should be affirmed.


Dated: August 31, 2015

Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/Carrie Costantin*
Carrie Costantin, #35925MO
First Assistant United States Attorney
111 South Tenth Street, 20th Floor
St. Louis, Missouri 63102

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies, pursuant to Rule 32(a)(7)(C) of the Federal Rules of Appellate Procedure and Eighth Circuit Rule 28A(h), that the foregoing was prepared using Microsoft Word 2010, in 14-point Times New Roman font and that it contains 6,121 words, as determined by the Microsoft Word 2010 word-counting feature and that the electronic versions of the brief has been scanned for viruses and is virus-free.

*/s/CarrieCostantin*
Carrie Costantin #35925MO
Assistant United States Attorney

# **CERTIFICATE OF SERVICE**

Pursuant to Federal Rules of Appellate Procedure 25(d) and Eighth Circuit Local Rule 25A(d), the undersigned hereby certifies that on August 31, 2015, the foregoing was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF.  Participants in the case who are registered CM/ECF users, including attorney Timothy Kane, will be served by the CM/ECF system.

*/s/Carrie Costantin*
Carrie Costantin, #35925MO
Assistant United States Attorney