# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

## Case No. 14-3495

_____

## BILLIE JEROME ALLEN,

## Appellant,

## v.

## UNITED STATES OF AMERICA,

## Appellee.

_____

## APPELLANT'S REPLY BRIEF
_____

## CAPITAL § 2255 PROCEEDINGS
(District Court Case No. 4:07-CV-0027-ERW)

Timothy Kane
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
 for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

September 16, 2015

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................................i

TABLE OF AUTHORITIES ........................................................................ ii

A. The jury was anonymous .............................................................................1

B. Juror anonymity was improper under *Darden* .......................................3

C. Mr. Allen was prejudiced .............................................................................6

CONCLUSION .................................................................................................9

# TABLE OF AUTHORITIES

**Federal Cases**

*Taylor v. Kentucky*, 436 U.S. 478 (1978) ...................................................................7

*United States v. Brown*, 303 F.3d 582 (5th Cir. 2002) .........................................5, 6

*United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995)....................................passim

*United States v. Edmond*, 52 F.3d 1080 (D.C. Cir. 1995) ....................................5, 6

*United States v. Lee*, 886 F.2d 998 (8th Cir. 1989) ...................................................2

*United States v. Peoples*, 250 F.3d 630 (8th Cir. 2001) .........................................2, 6

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) ...............................................6

Appellant Billie Jerome Allen respectfully submits this reply to the Government's Brief of Respondent–Appellee (the "Response").[1]

The Government raises three arguments in its Response: first, that the jury was not actually anonymous; second, that an anonymous jury was proper under the factors set forth in *United States v. Darden*, 70 F.3d 1507 (8th Cir. 1995); and, third, that Mr. Allen was not prejudiced. These arguments are unavailing, as explained below.

## A. The jury was anonymous

As set forth in AOB, the District Court empaneled an anonymous jury. AOB 12-14. The court ordered the jurors not to reveal their names or addresses in completing their questionnaires or during voir dire and trial. *Id.* Instead, the court ordered that the jurors would "be referred to only by number during this whole process." JA 113. This procedure was identical to the one used in *Darden*, where this Court recognized that "an anonymous jury" was empaneled when the jurors were "identified by numbers rather than their names." *Darden*, 70 F.3d at 1533.

In its Response, the Government nonetheless argues that, at the time of trial, the law of this Circuit "distinguished between a completely anonymous jury and a jury in which numbers were used." Resp. 12. This is plainly incorrect, as it

---

[1] Styles and citations in this reply brief follow those used in Appellant's opening brief ("AOB"). *See* AOB at iv.

overlooks the fact that *Darden* involved an anonymous jury that was "identified by numbers."

The Government bases its erroneous argument on *United States v. Lee*, 886 F.2d 998 (8th Cir. 1989), *see* Resp. 13, but *Lee* is inapposite. *Lee* involved a ten-defendant trial where the defendants objected to a combination of security measures, including the presence of numerous marshals in the courtroom, jury sequestration, and the use of juror numbers during voir dire. *Lee*, 886 F.2d at 1001. Unlike this case, there was no indication in *Lee* that the seated jurors were referred to by number during trial, or that the parties did not know the seated jurors' names, and thus the defendants did not argue that the use of an anonymous jury alone violated their due process rights. *See id.*

For these reasons, *Darden* was this Circuit's first decision squarely addressing such a claim, and the *Darden* court clearly recognized that using numbers to refer to jurors amounts to seating an anonymous jury. *Darden* was controlling law at the time of Mr. Allen's trial in 1998, and trial counsel had a duty to know the law and raise an objection based upon it.

The Government also cites this Court's post-trial decision in *United States v. Peoples*, 250 F.3d 630, 635 (8th Cir. 2001), *see* Resp. 14, but *Peoples* did not, and could not, alter the holding of *Darden*. *Peoples* merely recognized that numerical identification of jurors is acceptable where the *Darden* factors justify anonymity.

*See Peoples*, 250 F.3d at 635.  The Government errs in reading *Peoples* as having adopted a nonsensical distinction between an "anonymous" jury and a jury identified only by "the use of numbers."  *See* Resp. 14.

Based on its misreading of the case law, the Government concludes that "[t]he District Court's use of numbers to identify the jurors did not limit the information the parties knew about the jurors," and thus the jury in this case was not truly "anonymous."  Resp. 17.  The Government's strained reasoning overlooks that *the parties did not know the seated jurors' names*, as the jurors themselves were repeatedly reminded.  *See* AOB 3-6, 12-14.  This amounts to an "anonymous" jury under any creditable meaning of the word, and no court has ever held otherwise.

**B.  Juror anonymity was improper under *Darden***

Under *Darden*, a trial court must find "strong reason to believe the jury needs protection" before ordering juror anonymity.  *Darden*, 70 F.3d at 1532 (internal quotation omitted).  The District Court made no such finding here.

The Government nonetheless argues that the jury needed the protection of anonymity in this case pursuant to the five *Darden* factors.  Resp. 18-22.  The Government recognizes that the first two *Darden* factors are *not* implicated in this case, *i.e.*, that Mr. Allen was not involved in organized crime and was not part of a group with any capacity to actually harm a juror.  *See id*. at 19.  On the basis of

these concessions alone, this Court should reject the notion that the jurors needed the protection of anonymity.

As to the fourth and fifth factors – "lengthy incarceration" and "extensive publicity" – the Government does not contest that such circumstances are inherent in federal capital cases. *See* Resp. 20. The Government instead mischaracterizes Appellant's position as urging the Court to hold that these factors do not "count" in federal capital cases. *Id*. Appellant has made no such argument, but has instead observed that – lest anonymous juries are deemed *always* to be proper in capital cases – the fourth and fifth factors cannot alone justify anonymity. *See* AOB 14-15. Indeed, such a ruling would undermine the bedrock principle that capital cases require "a greater degree of reliability," not a lesser one. *Id.* at 15 (internal quotation omitted).

The Government's primary argument under *Darden* is that the trial evidence included two letters from Mr. Allen to his best friend, Jay Grant, asking him to "say the right things" in his testimony. Resp. 21. The letters, however, fall well short of demonstrating a "strong reason to believe the jury need[ed] protection." *Darden*, 70 F.3d at 1532. The letters were written by Mr. Allen from jail to a longtime friend. The letters suggest no threat of violence whatsoever, let alone any capacity to harm. The fact that Mr. Grant, who had no criminal history, turned the

letters over to the Government and became a Government witness, demonstrates that the letters did not interfere with the judicial process at all.

Because the letters, even when considered in the light most favorable to the Government, do not suggest any threat or capacity to harm anyone, the cases that the Government cites are inapposite. *See* Resp. at 21-22 (citing *United States v. Edmond*, 52 F.3d 1080 (D.C. Cir. 1992), and *United States v. Brown*, 303 F.3d 582 (5th Cir. 2002)). In *Edmond*, the defendant was part of "a large-scale criminal organization that . . . used violent acts to achieve its goals" and "had the capacity to harm jurors." *Edmond*, 52 F.3d at 1091. The defendant's associates had in fact threatened to harm government witnesses in the case and had taken concrete steps toward doing so by seeking to locate witnesses through fraudulent means. *Id*. at 1091-92. In *Brown*, the defendants were also part of a large scale conspiracy, and included a former Governor and other state officials, some of whom had "already proven their ability to corrupt the legal system" by, *inter alia*, engaging in bribery and pleading guilty to witness tampering. *Brown*, 303 F.3d at 588, 602.

These decisions provide little guidance in the very different circumstances of Mr. Allen's case. Mr. Allen was not part of any group or network with the capacity to threaten or harm jurors. He was incarcerated throughout pretrial and trial proceedings and never contacted anyone outside his small circle of family and friends. He never indicated an intent to harm or threaten anyone involved in the

5

case. There was simply not a "strong reason to believe the jury need[ed] protection" from Mr. Allen. *Darden*, 70 F.3d at 1532.

By contrast, where federal courts *properly* authorize anonymous juries, the need for protection is manifest. *See, e.g.*, *Darden*, *supra* (RICO case involving seventeen unindicted co-conspirators and seven defendants who operated "an extraordinarily violent" drug organization for more than a decade; the conspiracy "resorted to murder to protect the organization and further its interests"; "many members and associates [of the organization] remained at large throughout the trial"; and the organization had "an extensive history of conflict with the criminal justice system, including the intimidation and murder of government witnesses"); *Peoples*, *supra* (prosecution of two defendants in murder-for-hire of federal government witness, where the actual killers were unknown and at large at the time of trial); *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) (prosecution of international drug conspiracy involving two major internal drug organizations, murder of government witnesses, and attempted bribery of government witnesses); *see also Brown*, *Edmond*, *supra*.

### C. Mr. Allen was prejudiced

Mr. Allen was prejudiced because the unusual anonymity procedures created the impression that Mr. Allen was a dangerous person from whom the jurors had to be protected, and because the District Court failed to take appropriate remedial

measures. AOB 20-22. The prejudice was especially apparent at penalty phase where Mr. Allen's dangerousness was a key issue in dispute, and where the jury's sentencing verdicts were closely split. *Id.* at 22-23. The Government does not persuasively contest Mr. Allen's arguments as to penalty phase prejudice. *See* Resp. 22-26.

The Government does argue that Petitioner was not prejudiced because potential jurors completed a fourteen-page questionnaire and voir dire lasted for five days. Resp. 23. Similar to its reliance on the fourth and fifth *Darden* factors, however, this Government argument, if accepted by the Court, would exclude every federal capital defendant from receiving the protections of *Darden*. All federal capital cases involve thorough voir dire and extensive questionnaires. Such routine procedures do not render juror anonymity harmless.

The Government also argues that the Court's instructions on the presumption of innocence preclude a finding of prejudice. Resp. 23-24. But such instructions are ubiquitous, and denial of such an instruction is itself constitutional error. *Taylor v. Kentucky*, 436 U.S. 478 (1978). Moreover, the Court did not instruct the jury on the presumption of innocence at the penalty phase, because the presumption no longer applied at that point. The instructions therefore did nothing to ameliorate the penalty phase prejudice.

The Government defends the District Court's failure to take remedial

measures by contending that "the District Court operated as though the practice was routine," and Mr. Allen was therefore not prejudiced. Resp. 24-25. The Government's contention is belied by the record. The court and the parties repeatedly accentuated how *unusual* the practice was. For example, the District Court told the jurors that it was "[k]ind of weird we are talking in numbers here," and commented that it "[k]ind of reminds me of that old show with Maxwell Smart, where they referred to 'number 6' and 'number 5.'" JA 149-50; *see also* JA 120, 154. A juror hearing such comments would not view the anonymity procedures as "routine." In fact, a number of the jurors had served on juries in prior cases, so they would have been well aware of the unusual nature of the secrecy in this case. *See* JA 124-30, 144-47, 158.

## CONCLUSION

For the reasons set forth above and in Appellant's prior submissions, this Court should grant relief or, at a minimum, remand for a limited hearing on the question of counsel's deficient performance.

Respectfully Submitted,


/s/ Timothy Kane
Timothy Kane
Eric Montroy
Federal Community Defender Office
 for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Dated:        September 16, 2015

**Statement of Compliance with Eighth Circuit Rule 28A(h)**

I, Timothy Kane, hereby certify that Appellant's Reply Brief has been scanned for viruses, and the document is virus-free.

/s/ Timothy Kane
Timothy Kane

**Certificate of Service**

I, Timothy Kane, hereby certify that on this 16th day of September, 2015, I filed the foregoing Appellant's Reply Brief with service via electronic delivery to:

Ms. Carrie Constantin
First Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102


/s/ Timothy Kane
Timothy Kane