# IN THE UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

### Case No. 14-3495

_____

### BILLIE JEROME ALLEN,

### Appellant,

### v.

### UNITED STATES OF AMERICA,

### Appellee.

_____

### PETITION FOR PANEL REHEARING
### AND FOR REHEARING EN BANC

_____

### CAPITAL § 2255 PROCEEDINGS
(District Court Case No. 4:07-CV-0027-ERW)

Timothy Kane
Eric Montroy
Assistant Federal Defenders
Federal Community Defender Office
  for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

October 6, 2016

# TABLE OF CONTENTS

TABLE OF CONTENTS.............................................................................................i

TABLE OF AUTHORITIES .................................................................................. ii

PRELIMINARY STATEMENT REGARDING CITATIONS ............................ iii

SUMMARY OF WHY REHEARING SHOULD BE GRANTED .........................1

THE COURT SHOULD GRANT REHEARING AND ISSUE A CERTIFICATE
OF APPEALABILITY ON MR. ALLEN'S CLAIM THAT THE GOVERNMENT
VIOLATED *BATSON* AND THAT APPELLATE COUNSEL INEFFECTIVELY
FAILED TO LITIGATE THE VIOLATIONS .............................................................2

    A.  Background ....................................................................................2
    B.  Legal Principles..........................................................................4
    C.  Analysis ......................................................................................5
    D.  Appellate Counsel Were Ineffective.........................................12
    E.  The District Court Erred.............................................................13

CONCLUSION .....................................................................................................15

# TABLE OF AUTHORITIES

## Federal Cases

*Allen v. United States*, 2011 WL 1770929 (E.D. Mo. 2011) ("DCO") ............passim

*Batson v. Kentucky*, 476 U.S. 79 (1986).............................................................passim

*Carter v. Bowersox*, 265 F.3d 705 (8th Cir. 2001) ..................................................12

*Claudio v. Scully*, 982 F.2d 798 (2d Cir. 1992) .......................................................12

*Davidson v. Harris*, 30 F.3d 963 (8th Cir. 1994).......................................................7

*Doss v. Frontenac*, 14 F.3d 1313 (8th Cir. 1994)......................................................4

*Eddings v. Oklahoma*, 455 U.S. 104 (1982) ..............................................................6

*Foster v. Chatman*, 136 S. Ct. 1737 (2016).....................................................passim

*Frank v. Brookhart*, 877 F.2d 671 (8th Cir. 1989) ..................................................10

*Greer v. Mitchell*, 264 F.3d 663 (6th Cir. 2001).....................................................14

*Irvin v. Dowd*, 366 U.S. 717 (1963).........................................................................10

*Lockett v. Ohio*, 438 U.S. 586 (1978) ........................................................................6

*Matire v. Wainwright*, 811 F.2d 1430 (11th Cir. 1987)............................................13

*Miller-El v. Cockrell*, 537 U.S. 332 (2003) ............................................................14

*Miller-El v. Dretke*, 545 U.S. 231 (2005) ..........................................................4, 6, 7

*Payne v. United States*, 78 F.3d 343 (8th Cir. 1996) ...............................................14

*Randolph v. Kemna*, 276 F.3d 401 (8th Cir. 2002).....................................................2

*Slack v. McDaniel*, 529 U.S. 473 (2000) ............................................................2, 13

*Snyder v. Louisiana*, 552 U.S. 472 (2008)................................................................4

*Starr v. Lockhart*, 23 F.3d 1280 (8th Cir. 1993) .....................................................12

*United States v. Allen,* 247 F.3d 741 (8th Cir. 2001)..................................................3

*United States v. Brown*, 528 F.3d 1030 (8th Cir. 2008) .....................................13, 14

## Federal Statutes and Rules

28 U.S.C. § 2253 ..........................................................................................................1

28 U.S.C. § 2255 ..................................................................................................passim

Eighth Circuit Local Rule 40A ....................................................................................1

F.R.A.P. 35...................................................................................................................1

F.R.A.P. 40...................................................................................................................1

**PRELIMINARY STATEMENT REGARDING CITATIONS**

Citations to court documents in the § 2255 proceedings below (District Court Case No. 4:07-cv-27) are indicated as "Civ. Doc. #."  Pin cites to court documents refer to the page numbers applied by the ECF system, not necessarily to the page number on the original document.

The trial transcript is cited by the transcript volume number (Roman numerals are used) and page number(s).

The District Court's opinion denying a hearing and denying relief on the claim presented herein is available at *Allen v. United States*, 2011 WL 1770929 (E.D. Mo. 2011).  The opinion is cited as "DCO" herein.

Appellant Billie Jerome Allen, a death-sentenced federal prisoner, seeks panel rehearing and rehearing en banc pursuant to F.R.A.P. 35, F.R.A.P. 40, and Eighth Circuit Local Rule 40A(b) following the panel's denial of a Certificate of Appealability (COA) on the below claim on May 18, 2015, and its subsequent denial of his appeal on July 20, 2016.

## SUMMARY OF WHY REHEARING SHOULD BE GRANTED

This federal capital case presents a question of exceptional importance regarding whether this Circuit's decisions to grant or deny COA are faithful to Supreme Court precedent. Through forum-selection and its use of peremptory challenges, the government tried this capital case before a jury that included only two African-Americans. Trial counsel objected to the government's peremptory challenges as violating *Batson v. Kentucky*, 476 U.S. 79 (1986), but the District Court erroneously overruled the objections. After Mr. Allen was convicted and sentenced to death, his counsel ineffectively failed to litigate the *Batson* violations on appeal. In these § 2255 proceedings, Mr. Allen alleged appellate counsel's ineffectiveness in failing to litigate the *Batson* issue, but the District Court erroneously denied all factual development and denied relief.

Mr. Allen sought a COA on the *Batson* claim from this Court, but a panel denied the request. That decision was erroneous as explained herein.[1] Moreover,

_____

[1] Under 28 U.S.C. § 2253(c)(2), a COA should issue if the appellant has

after the panel denied COA, the Supreme Court decided *Foster v. Chatman*, 136 S. Ct. 1737 (2016). *Foster* strongly supports Mr. Allen's arguments that the District Court erred in denying factual development of this claim, and that the government violated *Batson* at Mr. Allen's trial.

**THE COURT SHOULD GRANT REHEARING AND ISSUE A CERTIFICATE OF APPEALABILITY ON MR. ALLEN'S CLAIM THAT THE GOVERNMENT VIOLATED *BATSON* AND THAT APPELLATE COUNSEL INEFFECTIVELY FAILED TO LITIGATE THE VIOLATIONS**

### A. Background

Mr. Allen is African-American, and the victim in this case was white. Although the crime occurred in the city of St. Louis and was investigated in large part by the Metropolitan Police Department, the crime was prosecuted federally, and the jury venire was therefore drawn from the Eastern District of Missouri. At voir dire, only seven African-Americans were on the panel from which the seated jurors were chosen. The government used peremptory challenges to strike five of them. Vol. V-A 119-20.

---

made "a substantial showing of the denial of a constitutional right." To meet this standard, the applicant need only show that "reasonable jurists could debate . . . whether the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted). This Court has recognized that the "reasonable-jurists-could-debate" threshold is a "modest standard." *Randolph v. Kemna*, 276 F.3d 401, 403 n.1 (8th Cir. 2002) (internal quotation marks omitted).

The defense objected, and the District Court acknowledged a *prima facie* case of discrimination. *Id.* at 124. The court asked for a proffer of the government's reasons, after which defense counsel withdrew objections as to two of the jurors. *Id.* at 128. The defense maintained its objections to the strikes of Jurors 83, 134 and 139, the specific circumstances of which are discussed below. The District Court denied relief. Vol. V-A at 124, 136-37. Mr. Allen's seated jury consisted of ten white jurors and two African-American jurors.[2] The jury convicted Mr. Allen and sentenced him to death.

On appeal, appellate counsel failed to raise any of the *Batson* violations. Counsel raised several unpreserved errors that this Court denied under plain error review. *See United States v. Allen,* 247 F.3d 741, 767-68, 778 (8th Cir. 2001).

In these § 2255 proceedings, Mr. Allen alleged that the government violated *Batson* and that appellate counsel were ineffective in failing to litigate the *Batson* violations. *See* Civ. Doc. 60 at 27-30; Civ. Doc. 94 at 60-76. Mr. Allen sought discovery of the government's records regarding its use of peremptory challenges and requested an evidentiary hearing to address appellate counsel's ineffectiveness. *See* Civ. Doc. 116 at 6-7, 21.

---

[2] An eighth African-American venireperson was in the panel of potential alternate jurors and was not struck by the government. *See* Vol. V-A 119-20. That venireperson became an alternate but did not participate in deliberations.

The District Court denied all discovery and denied a hearing on this claim. DCO, *13-*16. Despite the absence of evidence and appellate counsel's pursuit of plain error claims, the court attributed counsel's omission to "an exercise of sound appellate strategy." DCO at *14. The court denied relief and denied a COA.

Mr. Allen sought a COA on this claim directly from this Court. The Court denied the request on May 18, 2015.

## B.     Legal Principles

The Equal Protection Clause forbids striking even a single venireperson for a discriminatory purpose. *Foster*, 136 S. Ct. at 1747; *Snyder v. Louisiana*, 552 U.S. 472, 478 (2008). A prosecutor's stated reasons for a strike must "withstand closer scrutiny." *Foster*, 136 S. Ct. at 1752. "If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false." *Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). In other words, a prosecutor's proffer of false or "shifting" reasons supports a finding of racial discrimination. *Foster*, 136 S. Ct. at 1752. The failure to strike similarly-situated white jurors also indicates that the prosecutor's explanation is pretextual. *Id*. at 1750-51, 1754; *Miller-El*, 545 U.S. at 241; *Doss v. Frontenac*, 14 F.3d 1313, 1316-17 (8th Cir. 1994).

In *Foster*, the Supreme Court made clear that "all of the circumstances that bear upon the issue of racial animosity must be consulted." *Foster*, 136 S. Ct. at

1748 (quotation omitted). And because "determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial evidence of intent as may be available," records from the prosecution file are "entitled to significant weight." *Id*. at 1748, 1753 (quotation and internal alterations omitted); *accord id*. at 1755 ("The contents of the prosecution's file . . . plainly belie the State's claim that it exercised its strikes in a 'color-blind' manner.").

Here, scrutiny of the government's asserted reasons for the strikes of Jurors 83, 134, and 139, when viewed against the record and when compared with the characteristics of white venirepersons who were not stricken, shows that the government's stated reasons were pretextual. At a minimum, this scrutiny demonstrates that reasonable jurists could debate whether discovery and a hearing are necessary to reliably resolve this claim.

### C. Analysis

#### 1. Juror 83

At trial, the government's proffered reasons for striking Juror 83 included that she "raised [her] hand[] and said that blacks are treated unfairly in the system." Vol. V-A 127, 133. This reason was false, as the government apparently conceded in the § 2255 proceedings below. *See* Doc. 79 at 80. The voir dire record shows that the five jurors who responded to that question were Jurors 16, 63, 100, 139,

and 195 – not Juror 83.  *See* Vol. I 79-82; Vol. II 103-05; Vol. IV 3-5.  The fact that the government at trial gave a factually incorrect reason for its strike of No. 83 indicates that the strike was pretextual.  *See Miller-El*, 545 U.S. at 252.

In this § 2255 proceeding, the Government asserted four reasons for striking No. 83: (1) she was sympathetic to psychological testimony; (2) her husband was once charged with a narcotics crime; (3) she was a legal secretary; and (4) she had a problem with partiality in response to one of the questions.  DCO at *14.

The first reason does not distinguish No. 83 from other jurors. Every venireperson who was not excused for cause had to answer that she or he could consider factors, including psychological evidence, as a reason to impose a sentence less than death.  The parties and the court, in fact, extensively discussed the wording of these questions during voir dire.  *See*, *e.g.*, Vol. III 68-73.  The fact that Juror 83 could consider psychological evidence in mitigation does not distinguish her from the other venirepersons eligible to serve.  The law has long required the sentencing jury to be able to consider and give effect to the character, background, and record of the defendant himself. *See Lockett v. Ohio*, 438 U.S. 586 (1978); *Eddings v. Oklahoma*, 455 U.S. 104 (1982).

The District Court nonetheless found that the Government's strike was appropriate on account of her answer to question 22 on the questionnaire, which asked, "Do you have any prejudice in favor, against, or any fixed opinions

concerning psychiatric or psychological testimony?" Juror 83 answered yes to this question, and wrote, "I do believe that a person's attitude and actions can be affected by psychological problems." Civ. Doc. 94, Ex. 41; *see* DCO at *14. To the extent this was the government's asserted reason for the strike, it was pretextual. The government did not ask Juror 83 any questions regarding this issue, and the failure to question jurors about matters the prosecutor later says were reasons for a peremptory strike is evidence of pretext. *See Miller-El*, 545 U.S. at 244; *Davidson v. Harris*, 30 F.3d 963, 966 (8th Cir. 1994).

The government's other asserted reasons are also unavailing. Juror 83 stated that her husband, who was on probation for two years, was treated fairly by the criminal justice system, and that she would not be influenced by his situation. Vol. I 86-87. Her response was indistinguishable from the responses of white jurors who were not struck by the Government. *See infra*.

The government's third asserted reason for striking Juror 83 was her work as a legal secretary. She testified, however, that her work was in a brokerage firm, that it would not affect her ability to be fair and impartial, that she had no training or experience in the area of criminal law, and that she would be able to follow the court's instructions of the law. Vol. III-A 78-79. Tellingly, Juror 70, a white female who was seated on the jury, similarly worked as a paralegal. Vol. II 212-15. Juror 70's testimony about her legal work was almost identical to Juror 83's.

*See* Vol. III-A 60 (Juror 70 testifying that her employer does not do criminal law work, she has no legal training in criminal law, and that she would be able to base her verdict on the evidence in this case and the court's instructions). This proffered race-neutral reason for the strike of Juror 83 also fails.

As to the Government's fourth asserted reason, it did not specify what "partiality" caused the strike of Juror 83, but she did not hold any personal, moral, religious, philosophical or other beliefs that would substantially impair her ability to return a verdict of death. Vol. III-A 77-80. Her feelings about the death penalty would not affect her ability "to reach a fair and impartial verdict in the first phase of the case." *Id.* at 79. If the government was nonetheless concerned, follow-up questions should have been asked, but were not.

### 2. Juror 134

The government justified its strike of Juror 134 based on her response to question 42, in which she endorsed the following multiple choice option: "I am generally opposed to the death penalty, but I believe I can put aside my feelings against the death penalty and impose the death penalty if it is called for by the facts and the law in this case." Civ. Doc. 94, Ex. 41. When questioned by the government, Juror 134 testified that she had no personal, moral, religious, ethical or philosophical beliefs against the death penalty that would prevent or substantially impair her ability to return a death verdict; her feelings about the

8

death penalty would not affect her ability to be fair during the guilt phase; she would always follow the Court's instructions; she would weigh the mitigating evidence against the aggravating evidence before returning a verdict; and she could vote for a verdict of death if she found that the aggravating factors outweighed the mitigating factors. Vol. V 41-43. Juror 149, a white venireperson, also answered E to question 42, and gave similar answers during voir dire. *See* Vol. V-A 24-28; Civ. Doc. 94, Ex. 41. The Government did not strike Juror 149, and she was in fact selected as an alternate juror. This reason was also pretextual.

### 3. Juror 139

The government asserted three reasons for striking No. 139: (1) she saw news about the case after being instructed not to; (2) she had a cousin in prison, a brother arrested for drug possession and a sister charged with shoplifting; and (3) she believed African-Americans are treated unfairly in the criminal justice system. Civ. Doc. 79 at 81.

As to the first reason, many venirepersons – more than fifty – testified that they read, watched, or heard media coverage about the crime before they were called as jurors. Vol. I 26-53; Vol. II 24-63. The government asserted at trial that No. 139 was the only person who told the Court she viewed media coverage in error after her first day of jury selection. The Court examined her, and she explained that what she had heard on television was that there was a jury selection

in the case, and she didn't realize it was the same case she had been summoned on until they said that. She also testified that despite what she heard, she could set it aside and decide the case based solely on the evidence and the Court's instructions. Neither the Court nor counsel asked further questions. *See* Vol. II 27-29.

Meanwhile, Jurors 70, 98, and 132, and alternate Juror 162 – who were white – all testified that they had heard or read news coverage about the offense. In answer to the Court's questions, all four of them answered that they had not formed any opinion as to the defendant's guilt or innocence, and they would be able to decide the case based on the evidence and the Court's instructions. *See* Vol. I 49, 51-52; Vol. II 37, 46-47. The government did not ask any follow-up questions of these venirepersons. The brief television coverage seen by No. 39 was no more significant to the case than the news reports heard by the four white jurors who served on the jury.

A party bears a heavy burden to show that a juror is actually prejudiced by news accounts. "[A]lthough [the government] has established that a juror read some of the news accounts, 'it is not required that jurors be totally ignorant of the facts and issues involved.'" *Frank v. Brookhart*, 877 F.2d 671, 675 (8th Cir. 1989) (citing *Irvin v. Dowd*, 366 U.S. 717, 722 (1963)). A similar burden should apply here where the District Court found a *prima facie* case of discrimination. As in *Frank*, the information in the news account accidentally heard by No. 139 was

10

information she already knew – jury selection had begun – and was not inflammatory. The government's assertion of news coverage as the reason for this peremptory strike was pretextual.

The Government's second reason is equally unavailing. Fifty venirepersons – including thirty-nine white people – told the District Court that a family member or friend had been arrested or convicted, and nine white venirepersons told the Court that they themselves had been arrested or convicted. The government struck eight venirepersons in this category, four against African-American (Jurors 83, 124, 134, and 139). Seven of the fifty venirepersons in this category served as jurors, and one served as an alternate. *See* Civ. Doc. 94 at 51-52 & n.17-n.21. Having relatives with a criminal history did nothing to differentiate Juror 139 from numerous white jurors, including seated jurors.

The government's final reason for the peremptory strike of No. 139 is also pretextual. The government argued that her affirmative answer to the Court's question whether she believed that African-American males are treated unfairly by the criminal justice system was a racially-neutral reason for the strike. This question was not race-neutral and was not a valid reason for a peremptory strike. Of the five venirepersons who answered affirmatively to this question, *see* Vol. I 79-82; Vol. II 103-105, four were African Americans (Nos. 16, 63, 139 and 139). Clearly, African Americans are entitled to observe and attest to the racial inequities

in the criminal justice system, and an affirmative response does not provide a valid, race-neutral reason for exercising a peremptory strike. Further, No. 134 testified that her opinion would not affect her ability to be a completely fair and impartial juror in this case. Vol. II 104-05. In any event, the government did not question No. 134 about this statement, and therefore it is suspect as a ground for a peremptory challenge.

### D. Appellate Counsel Were Ineffective

The trial court denied the objections and ruled that the reasons for the strikes were not "generally or merely pretext for purposeful discrimination." Vol. V 137. Nonetheless, this record presented a strong issue for appeal. There is a reasonable probability that, had this issue been raised on appeal, this Court would have found a *Batson* violation and vacated Mr. Allen's conviction and sentence. While raising multiple *unpreserved* claims under plain error review, appellate counsel failed to identify and litigate this issue, and that failure was ineffective.

Where there is a "reasonable probability that the neglected claim[s] would have succeeded on appeal, . . . counsel's failure to raise the claim f[alls] outside the range of reasonably competent assistance." *Claudio v. Scully*, 982 F.2d 798, 799 (2d Cir. 1992); *see also Carter v. Bowersox*, 265 F.3d 705, 716-17 (8th Cir. 2001) (finding appellate counsel ineffective for failure to raise meritorious claim, even though the claim would have been reviewed under the plain error standard); *Starr*

*v. Lockhart*, 23 F.3d 1280 (8th Cir. 1993) (finding trial and appellate counsel ineffective for failing to object to and raise an erroneous jury instruction); *Matire v. Wainwright*, 811 F.2d 1430, 1435 (11th Cir. 1987) (where the basis for a claim "was obvious on the record, and must have leaped out upon even a casual reading of transcript," and the law on the subject was "known at the time," appellate counsel was ineffective for failing to raise it).

### E.    The District Court Erred

Where, as here, an appellant made a prima facie showing of racial discrimination, it follows that he raised an issue that is "adequate to deserve encouragement to proceed further," *Slack*, 529 U.S. at 483-84, and thus warranted issuance of a certificate of appealability.

In denying relief and denying a COA, the District Court relied on *United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008), to reason that appellate counsel must winnow out weaker arguments for appeal and that, "absent contrary evidence," courts will assume that the decision not to raise a claim "was an exercise of sound appellate strategy." DCO at *14. The court's reliance on *Brown* was misplaced. First, and most importantly, the district court in *Brown* held an evidentiary hearing, thus giving the Brown an opportunity to present "contrary evidence." The District Court here denied Appellant any such opportunity, despite

allegations that, "if true, would entitle him to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996).

Second, *Brown* was not a capital case, and heightened profession norms apply to capital appellate counsel, just as they do to capital trial counsel. *See, e.g.*, *Greer v. Mitchell*, 264 F.3d 663, 679 (6th Cir. 2001) ("in a capital case ... appellate attorneys must err on the side of inclusion particularly where, as here, there appear to exist a significant number of facts to support the claim"). Third, Brown *obtained* a COA, despite Circuit law indicating that his effort to rely on retroactive application of *Booker* was foreclosed. *Brown*, 528 F.3d at 1034. Appellant's instant claim raises a far stronger basis for relief and, accordingly, a COA should have issued.

In short, the District Court's ruling that "Allen had non-frivolous arguments that these strikes were *Batson* violations," DCO at *16, itself shows that a certificate of appealability should have issued, because "[a] prisoner seeking a COA must prove something more than the absence of frivolity." *Miller-El v. Cockrell*, 537 U.S. 332, 338 (2003). Appellant meets that standard.

# CONCLUSION

For the reasons set forth above, Appellant respectfully asks that the Court grant rehearing and issue a certificate of appealability on the ground that the government violated *Batson v. Kentucky*, and that appellate counsel were ineffective in failing to litigate the error.

Respectfully Submitted,


/s/ Timothy Kane
Timothy Kane
Eric Montroy
Federal Community Defender Office
  for Eastern District of  Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Dated:         October 6, 2016

**Statement of Compliance with Eighth Circuit Rule 28A(h)**

I, Timothy Kane, hereby certify that this Petition for Rehearing has been scanned for viruses, and the document is virus-free.

/s/ Timothy Kane
Timothy Kane

## Certificate of Service

I, Timothy Kane, hereby certify that on this 6th day of October, 2016, I filed the foregoing Petition for Rehearing with service via electronic delivery to:

Ms. Carrie Constantin
First Assistant United States Attorney
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102

/s/ Timothy Kane
Timothy Kane